In the Matter of the TITLE, BALLOT TITLE AND SUBMISSION CLAUSE, and SUMMARY FOR 1999–2000 No. 29.

Bennett S. Aisenberg, Petitioner,

v.

Douglas Campbell and Mark Dorn,

and

Victoria Buckley, Rebecca Lennahan, and Richard Westfall, Title Board, Respondents.

No. 98SA416.

Supreme Court of Colorado, En Banc.

Feb. 16, 1999.

Susan E. Burch, Denver, Colorado Attorney for Petitioner.

Ken Salazar, Attorney General, Barbara McDonnell, Chief Deputy Attorney General, Michael E. McLachlan, Solicitor General, Paul Farley, Deputy Attorney General, Maurice G. Knaizer, Deputy Attorney General, State Services Section, Denver, Colorado Attorneys for Title Board.

Douglas Campbell, Pro Se.

Mark Dorn, Pro Se Arvada, Colorado.

Justice HOBBS delivered the Opinion of the Court.

In this original proceeding brought pursuant to section 1–40–107(2), 1 C.R.S. (1998), the petitioner, Bennett S. Aisenberg ("Aisenberg"), challenges the action of the initiative title setting board ("Title Board") in setting the title, ballot title and submission clause, and summary for Initiative "1999–2000 # 29" ("Initiative # 29").[1] Aisenberg contends that Initiative # 29 addresses multiple subjects, that the titles[2] and summary do not fairly and accurately describe the subject matter, and that the fiscal impact statement does not conform to applicable requirements.

Based upon our prior decisions regarding similar initiative proposals, we hold that Initiative # 29 violates the single subject requirement of the state constitution. It would (1) change the qualifications to serve as a state judge or justice, (2) change the qualifications to serve as a member of the judicial discipline commission, and (3) change the jurisdiction of county judges for the City and County of Denver. Each of these is a subject that serves a distinct and separate purpose from the other two, and these purposes are not dependent upon or connected with each other. We also hold that the titles and summary, in part, do not fairly, clearly, and

---

1. The text of Initiative # 29, along with the title, ballot title and submission clause, and summary, are attached to this opinion as an appendix.

2. As used in this opinion, "titles" refers to the title, ballot title and submission clause of Initiative # 29.

accurately reflect the true intent and meaning of Initiative # 29. In addition, we reject Aisenberg's other contentions.

## I.

Initiative # 29 proposes substantial changes to the 1966 voter-approved constitutional provisions regarding the method of selecting and the qualifications to serve as a judge or justice (judges) in Colorado.[3] It would make the following changes after November 6, 2000, among others: impose term limits upon judges across the state by limiting them to three future terms of four years duration each; provide that judges retained by less than a sixty percent vote at an election shall serve only until the next election and this year of service shall be counted as one of the three future terms that a judge may serve; select judges through governor nomination and senate consent; dispense with the requirement that the governor appoint from a list provided by a judicial nominating commission; compel a retention vote of the senate-approved judges at the next annual state election; mandate suspension of an active judge and compel a retention election if the judicial discipline commission makes a negative finding about a judge; remove the requirement that judges be licensed attorneys; authorize another retention vote regarding any judge by petition of registered electors; and prevent an active or senior judge from serving—following mandatory retirement, removal by discipline or election, resignation with a retention or removal election pending, or defeat for retention—without the written consent of all parties to a case or after being term-limited.

The initiative would also change the present qualifications to serve as a member of the judicial discipline commission, altering its composition from a commission composed of lawyers and non-lawyers to a commission composed solely of non-lawyers. In addition, county judges of the City and County of Denver appointed under the city charter could not serve as state court judges for any purpose.

Initiative # 29 would repeal provisions of the constitution and laws that conflict with the above provisions and further states that its provisions must be strictly construed and are severable and self-executing. Any Colorado person would have standing to enforce its provisions. Suits would be filed in the supreme court and decided within ninety days of filing.

The Title Board fixed the titles and summary on September 16, 1998. Aisenberg filed a motion for rehearing on September 23, 1998, pursuant to section 1–40–107(1), 1 C.R.S. (1998), which the Title Board heard and denied. Aisenberg subsequently filed a petition in this court for review of the Title Board's action.

## II.

We hold that Initiative # 29 contains three subjects in violation of the single subject provision of article V, section 1(5.5) of the Colorado Constitution: (1) qualifications for judges, (2) qualifications for members of the judicial discipline commission, and (3) jurisdiction of Denver county judges. Our decision in this regard is controlled by *In re Ballot Title "1997–1998 # 64"*, 960 P.2d 1192 (Colo.1998), and *In re Ballot Title "1997–1998 # 95"*, 960 P.2d 1204 (Colo.1998). We also hold that the titles and summary, in part, are not fairly, clearly, and accurately stated, but we do not agree with the remainder of Aisenberg's contentions.

### A.

*Single Subject, Titles, and Summary Requirements*

While Initiative # 29 eliminates some of the multiple subjects addressed by our previous decisions,[4] it nevertheless includes a com-

---

**3.** Article VI, section 6, entitled "Election of judges," was repealed November 8, 1966 with substantial constitutional changes being substituted in its place. *See* Constitutional Amendments and a Referred Law Submitted to and Adopted by the People at the General Election, November 8, 1966, ch. 455, sec. 6, 1967 Colo. Sess. Laws 6.

**4.** Specifically, we held that provisions of the initiative that proposed (1) to repeal the constitutional requirement that each judicial district have a minimum of one district court judge and

bination of subjects in contravention of the single subject requirement set forth in article V, section 1(5.5) of the Colorado Constitution. The product of a voter-approved referendum on the 1994 general election ballot, the Colorado Constitution provides that the Title Board may not set the title of a proposed initiative, or submit it to the voters, if the initiative contains multiple subjects:

> No measure shall be proposed by petition containing more than one subject, which shall be clearly expressed in its title; but if any subject shall be embraced in any measure which shall not be expressed in the title, such measure shall be void only as to so much thereof as shall not be so expressed. *If a measure contains more than one subject, such that a ballot title cannot be fixed that clearly expresses a single subject, no title shall be set and the measure shall not be submitted to the people for adoption or rejection at the polls.*

Colo. Const. art. V, § 1(5.5) (emphasis added).

Prior to submitting the single subject requirement to the voters for consideration, the General Assembly enacted a law, to be effective July 19, 1995, directing that the single subject and title requirements for initiatives—if adopted by voters—be "liberally construed, so as to avert the practices against which they are aimed and, at the same time, to preserve and protect the right of initiative and referendum." § 1–40–106.5(2), 1 C.R.S. (1998); ch. 22, sec. 1, § 1–40–106.5, 1994 Sess. Laws 73, 74. Although "we may not address the merits of a proposed initiative or suggest how an initiative might be applied if enacted, ... we must sufficiently examine an initiative to determine whether or not the constitutional prohibition against initiative proposals containing multiple subjects has been violated." *In re Ballot Title "1997–1998 # 30"*, 959 P.2d 822, 825 (Colo.1998) (citation omitted).

The constitutional single subject matter requirement enacted by the voters in 1994 applies to initiated statutes, as well as to initiated constitutional provisions, *see* Colo. Const. art. V, § 1(5.5), and to proposed constitutional amendments referred to the voters by the General Assembly, *see* Colo. Const. art. XIX, § 2(3). *See also* § 1–40–106.5(1)(a), 1 C.R.S. (1998). These provisions, in turn, were patterned after article VI, section 21 of the Colorado Constitution, which requires that every bill, except general appropriation bills, shall be limited to a single subject clearly expressed in its title.

The General Assembly has assigned to the Title Board the responsibilities of ensuring compliance with the single subject requirement and fixing fair and clear titles and summaries. It must "designate and fix a proper fair title for each proposed law or constitutional amendment, together with a submission clause." § 1–40–106(1), 1 C.R.S. (1998). It must also "prepare a clear, concise summary of the proposed law or constitutional amendment" which "shall be true and impartial and shall not be an argument, nor likely to create prejudice, either for or against the measure." § 1–40–106(3)(a), 1 C.R.S. (1998). In setting the title, the Title Board "shall consider the public confusion that might be caused by misleading titles and shall, whenever practicable, avoid titles for which the general understanding of the effect of a 'yes' or 'no' vote will be unclear." § 1–40–106(3)(b), 1 C.R.S. (1998). The Title Board must not permit "the treatment of incongruous subjects in the same measure," § 1–40–106.5(1)(e)(I), 1 C.R.S. (1998), and must act to "prevent surreptitious measures and apprise the people of the subject of each measure by the title" in order to "prevent surprise and fraud from being practiced upon voters." § 1–40–106.5(1)(e)(II), 1 C.R.S. (1998).

(2) to immunize from liability persons who criticize a judicial officer regarding his or her qualifications were separate subjects. *See In re Ballot Title "1997–1998 # 64"*, 960 P.2d at 1197. We also held that an initiative proposing to eliminate the power of home rule cities to control the election, appointment, and retention of municipal court judges and to enlarge the jurisdiction of the judicial discipline commission violated the single subject requirement. *See In re Ballot Title "1997–1998 # 95"*, 960 P.2d at 1206. These are the subjects which proponents have not included in Initiative # 29. However, they have chosen to retain in this proposal the separate subjects of altering the qualifications of the judicial discipline commission and altering the jurisdiction of the Denver county court.

The General Assembly provided that the purpose of the constitutional single subject requirement is to "prevent and inhibit various inappropriate or misleading practices that might otherwise occur." § 1–40–106.5(1)(c), 1 C.R.S. (1998). The legislature has assigned to us the duty of reviewing whether the Title Board has discharged its responsibilities. See § 1–40–107(2), 1 C.R.S. (1998). Upon a challenge being filed with us following denial of a rehearing petition by the Title Board, we must determine whether the titles and summary, in conjunction with the initiative proposal, clearly state and present a single subject that the voters can understand in reaching their decision to vote "yes" or "no". If the proposal contains, for example, a surreptitious measure, such that the voters cannot comprehend what is being proposed or could be misled or surprised, see § 1–40–106.5(1)(e)(II), 1 C.R.S. (1998), neither the Title Board nor this court can approve the titles and summary and forward them together with the initiative to the voters. This is the plain meaning of the constitutional single subject requirement and the General Assembly's implementing legislation regarding fair, clear, and accurate titles and summaries.

Thus, we have reiterated that the multiple subject prohibition prevents the "practice of putting together in one measure subjects having no necessary or proper connection, for the purpose of enlisting in support of the measure the advocates of each measure, and thus securing the enactment of measures that could not be carried upon their merits." § 1–40–106.5(1)(e)(I), 1 C.R.S. (1998). Each proposal within an initiative must depend "on its own merits for passage." In re Proposed Initiative Statute (1996–17), 920 P.2d 798, 802 (Colo.1996). The single subject requirement and its implementing statute act to "prevent surprise and fraud from being practiced upon voters." § 1–40–106.5(1)(e)(II), 1 C.R.S. (1998). They are intended to safeguard against "uninformed voting caused by items concealed within a lengthy or complex proposal." In re Proposed Initiative "Public Rights in Waters II", 898 P.2d 1076, 1079 (Colo.1995); accord In re Ballot Title "1997–1998 # 30", 959 P.2d at 825.

An initiative contains multiple subjects if "its text relates to more than one subject and if the measure has at least two distinct and separate purposes which are not dependent upon or connected with each other." In re Ballot Title "1997–1998 # 30", 959 P.2d at 825 (quoting In re Proposed Petition, 907 P.2d 586, 590 (Colo.1995)). This is the same standard that we have applied to bills of the General Assembly in reviewing compliance with the single subject requirement:

> In furtherance of these purposes the single subject requirement of Article V, Section 21, prohibits the joining in a single act of "disconnected or incongruous matters," In re Breene, 14 Colo. 401, 404, 24 P. 3, 3 (1890), or of "subjects having no necessary or proper connection ..." [Catron v. Board of County Commissioners, 18 Colo. 553, 557, 33 P. 513, 514 (1893)].

In re House Bill, 738 P.2d 371, 372 (Colo. 1987).

▬ The United States Supreme Court has suggested in its recent decision regarding the constitutionality of initiative regulation that the single subject requirement is properly within the legislative power of the states to prescribe.[5] See Buckley v. American Constitutional Law Found., Inc., —— U.S. ——, ——, 119 S.Ct. 636, 649, —— L.Ed.2d ——, —— (1999) ("[I]n aid of efficiency, veracity, or clarity, Colorado has provided for an array of process measures.... These measures prescribe, inter alia, a single subject per initiative limitation, Colo.Rev. Stat. § 1–40–106.5(1)(a)(1998)."). The single subject requirement does not prevent citizens from proposing state statutory and constitutional changes to the voters, rather it ensures that each proposal contains a singular purpose. We must not adopt standards or make interpretations that unduly limit or curtail the exercise of the initiative or referendum rights of the people of Colorado. See Havens v. Board of County Comm'rs, 924 P.2d 517, 524 (Colo.1996). At the same time,

---

**5.** This issue was not before the Supreme Court; thus, the Court's comment is instructive, but not dispositive.

because the people have approved the single subject requirement, the Title Board and this court must give it effect.

The ultimate responsibility for formulating a clear and understandable proposal for the voters to consider belongs to the proponents of the initiative. When we return the titles and summary to the Title Board for non-compliance with the applicable constitutional and statutory requirements, the Title Board must then determine whether any re-proposal of the initiative complies with the single subject and clarity requirements; if not, it must refuse to set the titles.

### B.

#### *Initiative # 29's Multiple Subjects*

Initiative # 29 repeats the inclusion of three separate and distinct subjects under the term "judicial personnel." Use of a generic title will not insulate a proposal from compliance with the applicable constitutional and statutory requirements. *See, e.g., In re Proposed Petition (Amend Tabor 25),* 900 P.2d 121, 125–26 (Colo.1995) (concluding that umbrella of "revenue changes" did not alter the fact that the measure contained two subjects, tax credit and ballot title procedural requirements); *In re Proposed Initiative "Public Rights in Waters II",* 898 P.2d at 1080 (holding that water conservation district elections and the public trust doctrine were two subjects improperly grouped under the general category of "water").

The Title Board and the proponents of Initiative # 29 contend that Initiative # 29 has a single subject matter: the selection, retention and removal of judicial personnel. We disagree. In *In re Ballot Title "1997–1998 # 64",* we concluded that the selection, retention, limitation on terms, and removal of judges statewide qualifies as a single purpose, i.e., the qualifications of state judicial officers. *See In re Ballot Title "1997–1998 # 64",* 960 P.2d at 1197. "Qualification" means "something that qualifies or restricts: LIMITATION, MODIFICATION." *Webster's Third New International Dictionary* 1858 (3d ed. 1961). Thus, provisions that have a proper connection to "changing the manner by which state court judges are nominated, appointed, and retained, the duration of judicial terms of office, and the imposition of term limits" relates to the purpose of modifying the qualifications of judicial officers. *In re Ballot Title "1997–98" # 64,* 960 P.2d at 1197 n. 11.

We further held that proposing to alter the qualifications and method of selection for membership on the judicial discipline commission was a separate subject because the power of the commission is "not derived from this judicial power, but rather has a separate and independent constitutional basis." *See id.* at 1199 (citing Colo. Const. art. VI, § 23(3)(e)). We repeated this holding in *In re Ballot Title "1997–1998 # 95",* 960 P.2d at 1209. In addition, Initiative # 64 would have changed the home rule powers of the City and County of Denver with regard to the Denver county court. We held this to be yet another subject. *See In re Ballot Title "1997–1998 # 64",* 960 P.2d at 1198.

In the present case, the initiative again combines the distinct subjects of judicial officer qualifications and discipline commission qualifications. In addition, it would alter the jurisdiction of Denver county judges by prohibiting them from serving as state judges for any purpose. These purposes are distinct and independent of each other.

### 1.

#### *Composition of the Judicial Discipline Commission*

The rule of stare decisis has as its object the "uniformity, certainty, and stability of the law and the rights acquired thereunder." *Creacy v. Industrial Comm'n,* 148 Colo. 429, 433, 366 P.2d 384, 386 (1961). It is not an inflexible or immutable rule. Courts must take into account changes in statutory or constitutional law and must be willing to depart from a prior ruling if the legislature or the people employing their legislative power have chosen to clarify or alter prior law. In addition, we must be willing to overrule a prior decision "where sound reasons exist and where the general interests will suffer less by such departure than from a strict adherence." *Id.* However, we will not depart from prior rulings "for slight or

trivial causes, and certainly not where such departure would promote injustice or defeat justice." *Id.*

The present case provides no basis for departure from our prior rulings. We have held that the judicial discipline commission is an independent constitutional body whose members are not judicial officers. *See In re Ballot Title "1997–1998 # 64"*, 960 P.2d at 1199–1200. The Colorado Constitution charges the judicial discipline commission with investigating and enforcing the Colorado Code of Judicial Conduct. *See id.* at 1199; Colo. Const. art. VI, § 23(3)(e). Alteration of the composition and manner of selection of judicial discipline commission members is a separate subject from the selection, retention, and removal of judges, the first subject matter of Initiative # 29.

Proponents of the initiative have joined these subjects under the term "judicial personnel." However, "[i]f the entire judicial branch were regarded as a single subject, incongruous and disconnected provisions could be contained in a single initiative and the very practices the single subject requirement was intended to prevent would be facilitated." *In re Ballot Title "1997–1998 # 64"*, 960 P.2d at 1200.

In our prior holding we said that:

Because the [judicial discipline] Commission is an independent constitutional body whose members are not "judicial officers," it follows that any alteration of Commission powers, or the composition and manner of selection of Commission membership, does not serve the purpose of altering the qualifications of judicial officers. Although the Commission concededly is a

part of the judicial branch, this fact does not change the result.

*In re Ballot Title "1997–1998 # 64"*, 960 P.2d at 1199–1200; *accord In re Ballot Title "1997–1998 # 95"*, 960 P.2d at 1209. Our prior precedent governs.

Proposing to change the composition and selection of the judicial discipline commission is unrelated to the qualifications to serve as a judicial officer and, thus, violates the single subject requirement for the reasons stated in our prior opinions controlling this case.[6]

### 2.

### *Jurisdiction of Denver County Judges*

Aisenberg contends that Initiative # 29 proposes an implied repeal of article VI, section 26, which grants to the City and County of Denver the power to control the selection, retention and removal of its county judges, because it would: (1) prohibit payment, appropriation, loan, or expenditure of state money for any judge who is not subject to the initiative, including City and County of Denver judges, (2) prohibit resigned or removed judges from serving in any state court, and (3) prohibit any judge of the Denver county court from being deemed a state court judge for any purpose.

Again, based on our precedent, we agree that Initiative # 29 improperly includes the separate subject of removing the jurisdiction of Denver county judges to serve as state judges for any purpose. Article VI, section 26 of the Colorado Constitution provides that:

The provisions of sections 16,[7] 20,[8] 23,[9] 24 [10] and 25 [11] hereof shall not be applica-

---

6. In light of our holding here, we do not address Aisenberg's contention relating to the appointment of special masters to assist the judicial discipline commission as provided in article VI, section 23(3)(e) of the Colorado Constitution.

7. Article VI, section 16 of the constitution provides:

In each county there shall be one or more judges of the county court as may be provided by law, whose full term of office shall be four years, and whose qualifications shall be prescribed by law. County judges shall be qualified electors of their counties at the time of their election or appointment.

Colo. Const. art. VI, § 16.

8. Article VI, section 20 of the constitution provides for the procedure to be followed subsequent to a vacancy upon the court. Section 20(1) would be repealed by Initiative # 29.

9. Article VI, section 23 of the constitution provides for the retirement and removal of justices and judges, and portions of the section would be repealed by Initiative # 29.

10. Article VI, section 24 of the constitution deals with judicial nominating commissions.

11. Article VI, section 25 of the constitution pertains to the election of judges and justices.

ble to judges of the county court of the City and County of Denver. The number, manner of selection, qualifications, term of office, tenure, and removal of such judges shall be as provided in the charter and ordinances of the City and County of Denver.

Colo. Const. art. VI, § 26.

Section 26 is a constitutional provision that vests the City and County of Denver with power to exercise independent control over the selection and authority of city and county judges within its jurisdiction. We have held that the proposed repeal of section 26 constituted a separate subject in an initiative dealing with qualifications for judicial officers. *See In re Ballot Title "1997–1998 # 64"*, 960 P.2d at 1198. We further stated that:

> [A]lthough section 26 indirectly affects the qualifications of Denver County court judges in the sense that it changes the governmental entity which controls those qualifications, its objective is to allocate authority over Denver county court judgeships to the City and County of Denver. The repeal of this provision therefore serves a similar purpose of reallocating governmental authority and control.

*Id.* The proponents of Initiative # 29 have now removed the language of their prior proposed initiatives that would have explicitly repealed section 26. However, they have substituted a prohibition against Denver county judges from serving as state judges for any purpose.[12] In doing so, they have repeated their inclusion of a subject that is distinct from the qualifications to hold judicial office.

During the hearing before the Title Board, the proponents asserted that because the Denver county court is subject to local fund-

ing, a judge of that court would have "certain restrictions on where he can be a judge and under what circumstances." Although the proponents stated in the Title Board's hearing on Initiative # 29 that they have acquiesced to the principle of local control by home rule cities and counties, the proposal does not so reflect. The wording of the initiative would prohibit any state funding of the Denver county court. It also provides that Denver's refusal to apply the same qualifications to Denver county judges, as the initiative would mandate for state judges, will result in the Denver county court losing the jurisdiction presently provided to it by the statutes of Colorado and the charter of the City and County of Denver.

Section 13–6–103 presently provides county courts, including the Denver county court, with statewide jurisdiction. *See* § 13–6–103, 5 C.R.S. (1998) ("The jurisdiction of the county court shall extend to all cases which arise within the boundaries of this state or are subject to its judicial power and which are within the limitations imposed by this article."). The municipal code of the City and County of Denver likewise recognizes that "[t]he County Court of the City and County of Denver shall have such civil, criminal, and appellate jurisdiction as now or hereafter may be provided by the constitution or general laws of the State of Colorado to be had or exercised by county courts." 1 Denver, Colo., Revised Municipal Code art. XIII, § A13.2 (1995 supp.).

The constitutional prohibition against an initiative proposing more than a single subject "prevents the proponents of an initiative from joining multiple subjects into a single initiative in the hope of attracting support from various factions which may have differ-

---

12. During the hearing by the Title Board to fix Initiative # 29, Douglas Campbell, a proponent of Initiative # 29, responded to the Title Board's question regarding section 26:

> We took [the repeal of section 26] out. If you'll take a look at 4–B you'll find that there's no repeal of section 26. In fact, what we've done is gone back and supported the ... [principle] ... of local control stating that for any judges for which there is local control such that those judges are not subject to this section

> 6. The state would have no responsibility for subsidizing those judicial positions. They would –they're going to be local control, they'll be local funding. . . . Denver can do ... [whatever] ... it wants to do. It's a home rule city.

Despite Mr. Campbell's assertion about preserving local authority, the initiative specifically prohibits the City and County of Denver from allowing Denver county judges to function as other county judges function across the state.

ent or conflicting interests." *In re Proposed Initiative "Public Rights in Waters II"*, 898 P.2d at 1079. Here, the proposal may attract the support of those who might favor limiting the jurisdiction of the Denver county court and those who might favor changing the qualifications of judicial officers. A voter might well favor the proponents' proposed method for selecting, retaining, and removing judges statewide but might strongly object to any change in the longstanding role exercised by the City and County of Denver over Denver county judges. Another voter might have the opposite conviction. A voter favoring one of the subjects but not the other is required to vote for both of them in an effort to secure approval of the subject he or she would like to have enacted. Article V, section 1(5.5) and its implementing legislation, section 1–40–106.5, 1 C.R.S. (1998), prevent such "log-rolling." *See In re Proposed Initiative "Public Rights in Waters II"*, 898 P.2d at 1079.

Initiative #29 does not cure the single subject problem we identified previously. The proponents seek to compel Denver to impose changes to the qualifications of Denver county judges matching the changes the initiative would impose on all other state judges; if Denver does not effectuate these changes, the county court's current jurisdiction would be curtailed. This is a separate subject because it involves altering the constitutional power of the City and County of Denver over the county court.

### 3.

### *Deletion of Law License Requirement Is Not a Separate Subject*

■ Initiative #29 also seeks to repeal sections 8 and 11, article VI of the Colorado Constitution. Section 8 presently states: "No person shall be eligible to the office of justice of the supreme court unless he shall be a qualified elector of the state of Colorado and shall have been licensed to practice law in this state for at least five years." Colo. Const. art. VI, § 8. Section 11 of the constitution provides that "[n]o person shall be

eligible to the office of district judge unless he shall . . . have been licensed to practice law in this state for five years." Colo. Const. art. VI, § 11. By statute, "judges of the court of appeals shall have the same qualifications as justices of the Colorado supreme court." § 13–4–103(2), 5 C.R.S. (1998).[13]

Initiative #29 would supersede the existing constitutional and statutory requirements that district court, court of appeals, and supreme court judges be licensed attorneys for at least five years. Because this proposed change pertains to the qualifications to hold judicial office, it is within the first subject matter of Initiative #29. Hence, we do not consider it to be a fourth subject matter.

### C.

### *Fair, Clear, and Accurate Titles and Summary*

Having determined that the Initiative contains multiple subjects in violation of Colorado's Constitution, we need not review Aisenberg's other contentions. However, because these issues have been briefed and this is the third time the parties have been before us on substantially similar proposals, we proceed to address the other matters in contention.

Aisenberg contends that the titles and summary do not fairly, clearly, and correctly express the true intent and meaning of Initiative #29. Specifically, Aisenberg argues that (1) the titles inaccurately represent the repeal of various sections presently within the Colorado Constitution; (2) the titles are misleading because they state that Initiative #29 limits the "future terms of office for *certain* state court judges and justices" whereas the text of the proposal states "[f]uture terms of office for county, district, court of appeals, and supreme court judges and justices;" (3) the titles and summary fail to provide a basis for voters to make an informative and intelligent decision on the proposal; and (4) the Title Board utilized the wrong procedure with regard to the fiscal impact statement. (Emphasis added.)

---

**13.** Also by statute, county judges in "counties of Class A and B" must be admitted to the practice of law in Colorado. § 13–6–203(2), 5 C.R.S. (1998). The initiative does not appear to propose any change to this requirement.

In reviewing these contentions, we look to the standards governing the Title Board's action. It must fix a title that "shall correctly and fairly express the true intent and meaning" of the constitutional amendment, "shall be brief," and "shall unambiguously state the principle of the provision sought to be added, amended or repealed." § 1–40–106(3)(b), 1 C.R.S. (1998). It "shall prepare a clear, concise summary of the proposed law or constitutional amendment," which "shall be true and impartial and shall not be an argument, nor likely to create prejudice, either for or against the measure." § 1–40–106(3)(a), 1 C.R.S. (1998).

Perfection is not the goal; however, the Title Board's chosen language must not mislead the voters:

> [w]e do not consider whether the Board set the best possible title, ballot title and submission clause and summary. Rather our duty is to ensure that the title, ballot title and submission clause, and summary fairly reflect the proposed initiative so that petition signers and voters will not be misled into support for or against a proposition by reason of the words employed by the board.

In re Ballot Title "1997–1998 # 62", 961 P.2d 1077, 1082 (Colo.1998) (quoting In re Proposed Initiated Constitutional Amendment Concerning the Fair Treatment of Injured Workers Amendment, 873 P.2d 718, 719 (Colo.1994)).

We will not "rewrite the titles or submission clause for the Board, and we will reverse the Board's action in preparing them only if they contain a material and significant omission, misstatement, or misrepresentation." In re Ballot Title "1997–1998 # 62", 961 P.2d at 1082. Thus, we engage all legitimate presumptions in favor of the propriety of the Title Board's action. See In re Proposed Initiative on "Trespass–Streams with Flowing Water", 910 P.2d 21, 23 (Colo.1996).

Employing these standards, we hold that the titles and summary fairly, clearly, and accurately reflect Initiative # 29's proposal to remove the law license requirement for judges and to repeal constitutional provisions enumerated in the initiative. The fiscal impact statement also complies with applicable requirements. We conclude, however, that the titles and summary do not fairly, clearly, and accurately reflect the judicial officer term limits proposal.

1.

*Law License Requirement*

■ The Title Board "is not required in the titles and summary to restate the obvious or set forth every detail. The aim is to capture, in short form, the proposal in plain, understandable, accurate language enabling informed voter choice in pursuit of the initiative rights of Colorado citizens." In re Ballot Title "1997–1998 # 62", 961 P.2d at 1083. Aisenberg argues that Initiative # 29's repeal of the law license requirement is not fairly stated and could result in voter surprise or fraud.

The summary to the titles at issue here delineates the repeal of the attorney licensing requirement as a qualification for judicial office above the county level in a clear and understandable manner. It states: "The measure would repeal conflicting provisions of the Colorado constitution including ... [t]he requirement that judges or justices above the county court level be licensed to practice law for at least five years." Thus, no voter confusion or surprise would ensue because the summary is phrased in a non-legalistic and accurate fashion.

We also conclude that Initiative # 29 does not inaccurately state the effect of its repeal provisions upon other sections of the Colorado Constitution affected by the proposal.[14]

---

**14.** The other sections of the constitution slated for repeal by Initiative # 29 are: the term of office for supreme court justices; the qualifications of supreme court justices; the term of office for district judges; the qualifications of district judges; the jurisdiction, election, term and qualifications of probate court judges; the jurisdiction, election, term and qualifications of juvenile judges; vacancies of judges and justices; and the composition of the judicial discipline commission.

**2.**

*Fiscal Impact Statement*

 Aisenberg also argues that the fiscal portion of the ballot title summary is misleading. In particular, Aisenberg contends that the summary incorrectly relies upon the fiscal impact determinations of the Office of State Planning and Budgeting and the Department of Local Affairs, rather than the determination of the Title Board itself. He claims that the Title Board must make an initial determination that Initiative # 29 will impact the state or any local government fiscally before the Title Board requests the assistance of the Office of State Planning and Budgeting and the Department of Local Affairs. We disagree.

Ordinarily, the summary must

include a fiscal impact statement in order to inform the electorate of the fiscal implications of the proposal. The Board is vested with discretion regarding how to best describe the fiscal impact without creating prejudice for or against the proposal. Explanation of the fiscal impact of a measure is not required when such impact cannot be determined from materials submitted to the Board due to uncertainties or variables inherent in the particular issue. If the Board has sufficient information to assess the fiscal impact of only certain provisions, it must provide fiscal information with regard to those provisions in isolation and should state which provisions have indeterminate fiscal impacts.

*In re Proposed Initiative on "Trespass–Streams With Flowing Water",* 910 P.2d at 26 (citations omitted).

Pursuant to section 1–40–106(3)(a), 1 C.R.S. (1998),[15] the Title Board may request assistance from the Office of State Planning and Budgeting and the Department of Local Affairs in assessing the fiscal impact of an initiative, without first making a determination that an initiative will have a fiscal impact on state or local governments. This section requires the Title Board to so consult when it determines that the measure will have a fiscal impact, and allows the Title Board to request the assistance of the Office of State Planning and Budgeting and the Department of Local Affairs at any time. Thus, we disagree with Aisenberg's argument in this regard.

**3.**

*Term Limits Requirement*

 We agree with Aisenberg that the titles do not fairly, clearly, and accurately reflect the meaning of the term limits proposal contained in Initiative # 29. The titles state that "certain state court judges and justices" shall be term-limited and thereby convey the impression that some but not all state court judges are subject to this feature of Initiative # 29. Although the Title Board "is not required in the titles and summary to restate the obvious or set forth every detail," *see In re Ballot Title "1997–1998 # 62",* 961 P.2d at 1083, the use of the term "certain" is misleading and promotes voter confusion. This is because the proposal, in turn, is either ambiguous or contains a concealed intent, such that the Title Board was unable to capture its meaning in the titles and summary so that the voters could give a "yes" or "no" answer to the proposition.

The material ambiguity or concealed intent of the term limits proposal arises from its effective date of November 6, 2000, in comparison with its provision for three four year future terms of office and the fact that the year 2000 election will occur on November 7, 2000. The titles and summary are not clear as to whether the initiative proposes that judges retained as a result of the year 2000 general election may serve the full terms they are elected to under the law as it exists on election day 2000, should Initiative # 29 also be approved by the voters that same day.[16]

---

**15.** Section 1–40–106(3)(a) provides that

if, in the opinion of the title board, the proposed law or constitutional amendment will have a fiscal impact on the state or any of its political subdivisions, [the title board] shall request assistance in such matter from the office of state planning and budgeting or the department of local affairs.

§ 1–40–106(3)(a), 1 C.R.S. (1998).

**16.** We do not comment upon the constitutionality of such a proposal at this time. We focus only

Currently, the official terms of office are ten years for a supreme court justice, eight years for a court of appeals judge, six years for a district court judge, and four years for a county judge. *See* Colo. Const. art. VI, § 7; § 13–4–104, 5 C.R.S. (1998); Colo. Const. art. VI, § 10(2); Colo. Const. art. VI, § 16. Initiative # 29 proposes that judges and justices exercising statewide jurisdiction would have only three future terms of four years each and that judges and justices not retained at an election by at least sixty-percent of the vote will have a term of only one year until the next annual election. This one year of service will count as one of the three future terms.

Although Initiative # 29's proposed effective date is recited as being November 6, 2000, the day before that year's general election, the titles and summary do not clearly state whether the term of office to which a judge is elected at that election is intended as one of the three future terms he or she is limited to by the initiative. Citizens voting at the year 2000 general election may act on the assumption that they are being asked to approve (1) ten year terms commencing in January of 2001 for supreme court justices, eight year terms for court of appeals judges, six year terms for district court judges, and four year terms for county court judges who are being considered for retention at that election and (2) four year terms that would be effective the next time these judges stand for retention. Other voters may believe that the judges up for retention on the year 2000 ballot will be entering upon their first of the three limited terms.

The initiative proponents and the Title Board in turn have a duty to fairly state the meaning of their proposal through its plain language so that voters may answer "yes" or "no" to the proposition. The term limits proposal, an essential feature of Initiative # 29, contains either a material ambiguity or concealed intent with regard to the terms of judges who stand for retention under the current law at the year 2000 general election.

on clarity of the language of the titles and summary to aid the voters in their choice.

Section 1–40–106.5(1)(e)(II) is intended to prevent "surreptitious measures" and imposes on the Title Board the duty to "apprise the people of the subject of each measure by the title" in order to prevent "surprise and fraud from being practiced upon voters." § 1–40–106.5(1)(e)(II), 1 C.R.S. (1998). In utilizing the term "certain judges and justices" in referring to Initiative # 29's term limits proposal, the Title Board reinforces voter confusion about the effect of a "yes" or "no" vote on Initiative # 29. The constitutional and statutory prohibitions against misleading titles and summaries are aimed at preventing just such abuse of the voters' right to be presented with straightforward distinct proposals.

## III.

Accordingly, we hold that because Initiative # 29 contains more than one subject, the Title Board erred in fixing the titles and summary of the initiative. In addition, we conclude that the titles and summary are unclear and misleading with regard to the term limits proposal. We therefore reverse the Title Board's action with directions to strike the titles and return the initiative to its proponent.

Justice SCOTT specially concurs in part and dissents in part.

## APPENDIX

Proposed Initiative Number 1999–2000 #'29 [1]

The title as designated and fixed by the Board is as follows:

AN AMENDMENT TO THE COLORADO CONSTITUTION CONCERNING JUDICIAL PERSONNEL, AND, IN CONNECTION THEREWITH, LIMITING FUTURE TERMS OF OFFICE FOR CERTAIN STATE COURT JUDGES AND JUSTICES; PROVIDING THAT THE GOVERNOR NOMINATE ALL STATE COURT JUDGES AND JUSTICES, SUBJECT TO SENATE AND VOTER APPROVAL; REQUIRING ANY JUDGE OR JUSTICE CONVICTED OF A CRIME,

1. Selection and Retention of Judges

RECEIVING A NEGATIVE DISCIPLINARY FINDING, OR SUBJECT TO REMOVAL BY PETITION, TO BE SUBJECT TO A RETENTION OR REMOVAL ELECTION; PROVIDING THAT FUTURE DISCIPLINE COMMISSION MEMBERS SHALL BE NOMINATED BY THE GOVERNOR SUBJECT TO SENATE APPROVAL AND SHALL NOT BE A LAWYER, JUDGE, OR JUSTICE; REQUIRING RECORDS AND REPORTS ON EACH JUDGE AND JUSTICE TO BE PUBLIC AND COMPUTER ACCESSIBLE; REQUIRING THAT VOTERS RECEIVE SPECIFIED INFORMATION ON EACH JUDGE AND JUSTICE; PROVIDING THAT ANY JUDGE OR JUSTICE RETAINED BY LESS THAN A 60% MAJORITY IS RETAINED FOR ONE YEAR ONLY; PROHIBITING CERTAIN PERSONS FROM SERVING AS SENIOR OR RETIRED JUDGES; PROVIDING ENFORCEMENT PROCEDURES; AND REPEALING CERTAIN CONSTITUTIONAL PROVISIONS TO CONFORM WITH THIS AMENDMENT.

The ballot title and submission clause as designated and fixed by the Board is as follows:

SHALL THERE BE AN AMENDMENT TO THE COLORADO CONSTITUTION CONCERNING JUDICIAL PERSONNEL, AND, IN CONNECTION THEREWITH, LIMITING FUTURE TERMS OF OFFICE FOR CERTAIN STATE COURT JUDGES AND JUSTICES; PROVIDING THAT THE GOVERNOR NOMINATE ALL STATE COURT JUDGES AND JUSTICES, SUBJECT TO SENATE AND VOTER APPROVAL; REQUIRING ANY JUDGE OR JUSTICE CONVICTED OF A CRIME, RECEIVING A NEGATIVE DISCIPLINARY FINDING, OR SUBJECT TO REMOVAL BY PETITION, TO BE SUBJECT TO A RETENTION OR REMOVAL ELECTION; PROVIDING THAT FUTURE DISCIPLINE COMMISSION MEMBERS SHALL BE NOMINATED BY THE GOVERNOR SUBJECT TO SENATE APPROVAL AND SHALL NOT BE A LAWYER, JUDGE, JUSTICE; REQUIRING RECORDS AND REPORTS ON EACH JUDGE AND JUSTICE TO BE PUBLIC AND COMPUTER ACCESSIBLE; REQUIRING THAT VOTERS RECEIVE SPECIFIED INFORMATION ON EACH JUDGE AND JUSTICE; PROVIDING THAT ANY JUDGE OR JUSTICE RETAINED BY LESS THAN A 60% MAJORITY IS RETAINED FOR ONE YEAR ONLY; PROHIBITING CERTAIN PERSONS FROM SERVING AS SENIOR OR RETIRED JUDGES; PROVIDING ENFORCEMENT PROCEDURES; AND REPEALING CERTAIN CONSTITUTIONAL PROVISIONS TO CONFORM WITH THIS AMENDMENT?

The summary prepared by the Board is as follows:

This measure amends the Colorado constitution and would affect all county and district court judges, the probate and juvenile court judges in the City and County of Denver, judges of the court of appeals, and justices of the supreme court. It would limit future terms of certain judges and justices to four years and prohibit certain judges and justices from serving more than three future terms at each court level. The measure provides that any future partial term constitutes a full term. The measure prohibits term-limited, mandatorily retired, removed from office, or defeated judges and justices from serving as active or senior judges. The measure requires the written consent of all parties for a senior judge to serve.

The measure changes the manner in which all state court judges and justices are selected by allowing the governor to nominate any qualified elector who resides in the judicial district even if the person was not recommended by a judicial nominating commission. The measure would prohibit any state court judge or justice from taking office until approved by the senate following a public hearing, held after at least ten days' notice, and the voters at a retention election in the first annual state election 90 days following approval or confirmation by the senate. The measure would suspend without pay any judge or justice convicted of a felony or misdemeanor or subject to any negative finding by the commission on judicial discipline

and require the judge or justice to face a retention election in the next November election more than ninety days following the conviction or finding.

The measure would require a removal election if signatures, not to exceed 7% of the total votes cast in the judicial district for the office of secretary of state, are collected within 9 months on petitions requesting the removal of any active or senior judge or justice.

If a judge or justice is retained or not removed by less than a 60% majority, the measure provides that the judge or justice is only retained or not removed until the next annual election.

The measure requires future members of the commission on judicial discipline to be confirmed by the senate, and prohibits lawyers, judges, or justices from being members. It would establish that all future complaints, papers, hearings, and findings of the commission are public and must be made computer accessible within 10 days.

The measure would require that calendar year information concerning the caseload, case resolution time, hours of attendance, and criminal sentencing information for each judge or justice be made public and computer accessible by the following March 1.

For each judge or justice facing a retention or removal election, the measure would require that ballot information booklets and mailed election notices contain information concerning any conviction or negative finding by the commission on judicial discipline, a true summary of the prior year's record, and a statement in favor of the incumbent and a summary of comments filed by any Colorado resident or group against retention or for removal.

The measure states that it shall be strictly construed and shall supersede any other state or local provision. It provides that any Colorado resident or group has standing to enforce its provisions, that the Colorado supreme court has jurisdiction to hear and decide any case concerning its enforcement, and that legal fees and costs shall be paid only to successful plaintiffs who seek to enforce this measure.

The measure prohibits the future expenditure of any state funds on any active or senior judge or justice, including those in the City and County of Denver, who is not subject to its provisions. It prohibits any person from serving as a judge or justice who is not subject to its provisions from serving as a state court judge or justice at any other level or in any other judicial district.

The measure would repeal conflicting provisions of the Colorado constitution including:
● The terms of office and qualifications for judges and justices;
● The appointments of judges and justices from a list of nominees submitted by a judicial nominating commission;
● The authority of the commission on judicial discipline to request the appointment of three judges or justices as special masters;
● The confidentiality of papers and proceedings before the commission on judicial discipline;
● The qualifications and number of members of the commission on judicial discipline; and
● The requirement that judges or justices above the county court level be licensed to practice law for at least five years.

The Department of Local Affairs believes that counties may have to pay some of the expenses incurred in making information concerning judges computer accessible. The Department cannot determine the amount of this fiscal impact.

The Office of State Planning and Budgeting deems the fiscal impact of this initiative on the state to be significant but indeterminate, since there will be additional elections and there may be backlogs in the legislature and the courts due to the confirmation process. Moreover, there will be a cost to make judges' records computer accessible. The Office of State Planning and Budgeting estimates that the base cost of replacing judges in fiscal year 2001–2002 may be $434,989.
September 16, 1998

Hearing adjourned 4:18 p.m.

The text of Initiative # 29 is as follows:

**Be it Enacted by the People of the State of Colorado:**

Section 1. Article VI of the state constitution is amended to add:

**Section 6. State judicial personnel—selection, retention, and removal.** After November 6, 2000:

**(1) Term limits.** Future terms of office for county, district, court of appeals, and supreme court judges and justices shall be four years. At each level, no one shall serve more than three future terms of office. Any future partial term shall count as a term of office.

**(2) Selection.** The governor shall nominate all future county, district, probate, juvenile, court of appeals, and supreme court judges and justices. No one shall take office without senate approval following a hearing with public testimony, held ten days or more after public notice. Nominees need not be chosen from a nominating commission list, but shall be qualified electors who reside in their judicial district while in office. Senate-approved nominees shall face a retention vote on the next annual state election date that is at least 90 days later.

**(3) Retention and removal. (a)** Despite any appeal, sentence delay, or other excuse, any negative finding by the judicial discipline commission or misdemeanor or felony conviction shall suspend an active or senior judge or justice without pay, and compel a retention vote on the next annual state election date that is at least 90 days later. With senate approval, the governor shall nominate all future commission members and special masters, who shall not be lawyers, judges, or justices.

**(b)** Any active or senior judge or justice shall be subject to removal on the next annual state election date 90 days or more after petition forms are filed with the election official with required entries, collected within nine months, of judicial district registered electors not to exceed 7% of the general election votes last cast in that district for all secretary of state candidates.

**(c)** To inform potential voters at any retention or removal election: all future commission complaints, papers, hearings, and findings shall be public, and shall be computer accessible within ten days; complete calendar year records on caseload, case resolution time, hours of courthouse attendance daily, and criminal sentencing by each judge or justice shall be public and computer accessible by the next March 1; and, in 12–point or larger type, ballot information booklets and mailed election notices shall include only a finding or conviction defined in (a), a true summary of the latest yearly record, and up to 500 words each for the incumbent and for a summary by the election official of all comments against retention or for removal, which may be filed by any Colorado resident or group. A majority under 60% shall retain that incumbent, or delay removal, only until the next annual election.

**(4) Enforcement. (a)** Section 6 shall be strictly construed; substantial compliance is insufficient. Its provisions are severable and self-executing, and shall not be harmonized with or balanced against, but shall supersede, any other state or local provision. Any Colorado resident or group shall have standing to enforce section 6. Suits shall be originally filed and heard in the supreme court and finally decided within 90 days of filing. Attorney fees and costs shall always be paid only to successful plaintiffs who seek to enforce section 6.

**(b)** No one shall serve as an active or senior judge or justice after mandatory retirement, removal by discipline or election, resignation with a retention or removal election pending, or defeat for retention, nor as a senior judge without the written consent of all parties to a case or after being term-limited. After June 30, 2001, no state funds shall be paid, appropriated, loaned, or spent for salary, benefits, or other compensation for an active or senior judge or justice in any state judicial district, including the City and County of Denver, who is not subject to sections 6 and 23, and 25 if active. Such active judge or justice starting a future term, and senior judge or justice serving after 2000, shall never serve in any active or senior judicial position at another state court level or state judicial district, nor be deemed a state court judge for any purpose.

Section 2. Article VI, sections 7, 8, 11, 14, 15, 20(1), 23(3)(g), the second sentences of 10(2) and 23(3)(a), and the third clause of the first sentence of 23(3)(e) of the state constitution are repealed.

Justice SCOTT, specially concurring in part and dissenting in part:

I join in the majority's judgment that Initiative "1999–2000 # 29" (Initiative # 29) "violates the single subject subject matter requirement" of the Colorado Constitution. Maj. op. at 258. I write separately, however, to address two matters. First, I do not agree with the majority that "qualifications" for judicial officers under the Colorado Constitution include judicial terms of office. In my view, the plain language of our constitution militates against such a conclusion and therefore, to the extent that the majority opinion depends upon such a construction, I disagree. Second, I write to indicate what, in my view, may be a useful tool of general application to determine whether an initiative covers more than a single subject under Colorado Constitution article V, section 1(5.5). Accordingly, for the reasons set forth below, I specially concur in part and dissent in part, joining in the judgment of the majority.

## I.

The majority assumes that qualifications for judicial office include the duration of each term of office. *See* maj. op. at 262. The plain language of our constitution, however, belies that assumption. In most every article addressing "qualifications" of judicial officers, the term appears separate and distinct from the particular judge's term of office. For example, Colorado Constitution article VI, section 14, states that "[t]he judge of the probate court of the city and county of Denver shall have the same qualifications *and term of office* as provided in this article for district judges...." (Emphasis added.) However, even more plainly, Colorado Constitution article VI, section 16 states, "[i]n each county there shall be one or more judges ... whose full term of office shall be four years, and whose *qualifications shall be prescribed by law.*" (Emphasis added.) The "qualifications" that are "prescribed by law," set forth in section 13–6–203, 5 C.R.S. (1998), necessarily do not include any provision for a term of office.[17] The "qualifications" set forth in the statute only include (1) a qualified elector of the county, and (2) for class A and B counties, admission to practice law, while for class C and D counties a high school diploma or its equivalent. Hence, by its plain language our constitution separates from and does not contemplate that a term of office is among those "qualifications" for judicial office. This construction is consistent throughout our constitution in its treatment of all judicial officers. In particular, while Colorado Constitution article VI, section 11 sets forth the qualifications for any person to hold "the office of district judge," Colorado Constitution article VI, section 10(2) sets the term of office of district judges. Likewise, whereas the qualifications to serve as a probate or juvenile judge of the city and county of Denver are set forth in Colorado Constitution article VI, sections 14 and 15, respectively, the term of office is set forth for both judges by reference to Colorado Constitution article VI, section 10(2).

I agree that our decision in *In re Title, Ballot Title and Submission Clause, and Summary for 1997–1998 # 64*, 960 P.2d 1192, 1197 n. 11 (Colo.1998), includes a footnote that suggests that a single initiative which sought to alter the manner in which judges are nominated, appointed and retained, judicial terms of office, and term limits would not

---

17. Section 13–6–203, 5 C.R.S. (1998) in turn describes the qualifications for county judges:
 (1) The county judge shall be a qualified elector of the county for which he is elected or appointed and shall reside there so long as he serves as county judge.
 (2) In counties of Class A and B, no person shall be eligible for election or appointment to the office of county judge unless he has been admitted to the practice of law in Colorado.

(3) In counties of Class C and Class D, no person shall be eligible for appointment to the office of county judge unless he has graduated from high school or has attained the equivalent of a high school education as indicated by the possession of a certificate of equivalency issued by the department of education, based upon the record made on the general educational development test.

violate the single-subject mandate of section 1(5.5), so long as the subject of the initiative was qualifications of persons for judicial office. While I joined in that opinion, I do not subscribe to the reasoning of that footnote, which was not germane to our holding and judgment. In fact, but for the majority's holding today, that suggestion in footnote 11 is no more than dicta. Thus, I would conclude that, notwithstanding that dicta, fidelity to the plain language of our constitution mandates that an initiative that addresses qualifications and term of office does not comply with the single-subject mandate. While not dispositive of the issue before us today, the cases in which we have addressed the qualifications of other constitutional officers have not included a discussion of the term of office of the subject official. *See Jackson v. State of Colorado,* 966 P.2d 1046, 1051 (Colo.1998) (holding that the "constitutional qualifications [for the office of sheriff] were exclusive, and the General Assembly had no authority to impose additional qualifications as a prerequisite to holding the office of county sheriff"); *Reale v. Board of Real Estate Appraisers,* 880 P.2d 1205, 1211 (Colo. 1994) (holding that "[t]he Colorado Constitution reserves no authority in the state legislature to change, add to, or diminish the qualifications for constitutionally created offices").

Because I do not read the term "qualifications" for constitutional office as broadly as the majority, I do not join in that portion of its opinion that depends upon such a conclusion.

## II.

### A.

In the interest of prohibiting abuses of, and facilitating full disclosure in, the initiative process, in 1994 the citizens of this state, through a voter referendum, amended our constitution to include the requirement that initiatives contain only one subject. *See* Colo. Const. art. V, § 1(5.5). In addition, as a by-product of the single-subject requirement, the amendment functions as a means of promoting citizen initiatives by facilitating the construction of clear, understandable initiatives. *See In re Title, Ballot Title and Submission Clause, and Summary With Regard to a Proposed Petition for an Amendment to the Constitution of the State of Colorado Adding Section 2 to Article VII (Petition),* 907 P.2d 586, 589 (Colo.1995).

However, the single-subject requirement has caused difficulty for many.

By way of example, this case represents the third trip to this court by the proponents of this initiative. *See In re the Title, Ballot Title and Submission Clause, and Summary for 1997–1998 # 95,* 960 P.2d 1204 (Colo. 1998); *In re the Title, Ballot Title and Submission Clause, and Summary for 1997–1998 # 64,* 960 P.2d 1192 (Colo.1998). On each occasion we have properly decided that the initiative at issue violates the prohibition against multiple subjects. It seems, then, that complying with the single-subject requirement has proven no easy task.

While the General Assembly has asked that we construe the language of article V, section 1(5.5) of our constitution "liberally," § 1–40–106.5(2), 1 C.R.S. (1998), nevertheless, we must follow its plain language. In doing so, it seems that recent experience might provide, as guidance, a nontechnical rule.

Today, I propose such a rule, consisting of two parts: (1) Where an initiative proposes to alter or amend more than one section of our constitution, it presumably involves more than a single subject; and, (2) unless that presumption is rebutted, it is therefore prohibited by our single-subject requirement. *See* Colo. Const. art. V, § 1(5.5); *In re Proposed Initiative 1996–4,* 916 P.2d 528, 533 (Colo.1996) ("If, for example, a constitutional provision contains multiple subjects and an initiative proposes to repeal the entire underlying provision, then the initiative contains multiple subjects."). Admittedly, this rule is, at best, rough, and should be applied only where two or more provisions of our constitution would be altered or supplemented by an initiative (leaving many cases to be resolved without the rule). Nonetheless, it is a rule that is functional. More importantly, perhaps, it provides a standard that can be readily understood and applied by the lay

citizen as well as attorneys versed in our precedent.

Assume, for example, that Initiative # 29 only proposed to alter the term of office of all trial court judges [18] and did not attempt to alter the qualifications currently in force.[19] Further assume the proponents attempted to do so by amending only Colorado Constitution article VI, sections 11,[20] 14,[21] 15,[22] and 16,[23] which deal with the qualifications for district judges, in Colorado Constitution article VI, section 11, and "qualifications and term of office" of district court, Colorado Constitution article VI, section 10(2),[24] probate court judges, Colorado Constitution article VI, section 14, juvenile court judges, Colorado Constitution article VI, section 15, and county court judges, Colorado Constitution article VI, section 16, respectively. My proposed rule would require that we presume the initiative covers *more* than one subject (since it alters more than one provision of our constitution). However, proponents would

then have the obligation of going forward to rebut the presumption. Further assume that under the initiative, section 10(2) was amended to provide a term of ten years for all district court judges and sections 14, 15, and 16 set the term of four, five, and six years, respectively, for probate, juvenile and county court judges. The presumption that the initiative involves more than one subject (it amends more than one section) may be rebutted.

The presumption would be overcome if the terms of office of judges are determined to encompass a single subject. Under our scheme of judicial office, with county court judges serving four years, district court judges serving six years, court of appeals judges serving eight years, and supreme court justices serving ten years, the terms are longer depending on the office in our judicial hierarchy. Therefore the terms of office are interconnected and necessarily related between the various judicial offices.

---

**18.** Judge of the court of appeals and supreme court are appellate judges and their terms of office are eight years and ten years, respectively. *See* Colo. Const. art. VI, § 7; § 13–4–104, 5 C.R.S. (1998).

**19.** While the majority assumes that a term of office is part and parcel of "qualifications" for judicial office, maj. op. at 262, the plain language of our constitution, in my view, requires otherwise. *See* Part I, *supra*.

**20.** Colorado Constitution article VI, section 11 states:

No person shall be eligible to the office of district judge unless he shall be a qualified elector of the judicial district at the time of his election or selection and shall have been licensed to practice law in this state for five years. Each judge of the district court shall be a resident of his district during his term of office.

**21.** Colorado Constitution article VI, section 14 states:

The probate court of the city and county of Denver shall have such jurisdiction as provided by section 9, subsection (3) of this article. The judge of the probate court of the city and county of Denver shall have the same qualifications and term of office as provided in this article for district judges and shall be elected initially by the qualified electors of the city and county of Denver at the general election in the year 1964. Vacancies shall be filled as provided in section 20 of this article. The number of

judges of the probate court of the city and county of Denver may be increased as provided by law.

**22.** Colorado Constitution article VI, section 15 states:

The juvenile court of the city and county of Denver shall have such jurisdiction as shall be provided by law. The judge of the juvenile court of the city and county of Denver shall have the same qualifications and term of office as provided in this article for district judges and shall be elected initially by the qualified electors of the city and county of Denver at the general election in the year 1964. Vacancies shall be filled as provided in section 20 of this article. The number of judges of the juvenile court of the city and county of Denver may be increased as provided by law.

**23.** Colorado Constitution article VI, section 16 states:

In each county there shall be one or more judges of the county court as may be provided by law, whose full term of office shall be four years, and whose qualifications shall be prescribed by law. County judges shall be qualified electors of their counties at the time of their election or appointment.

**24.** Colorado Constitution article VI, section 10(2) states: "In each judicial district there shall be one or more judges of the district court. The full term of office of a district judge shall be six years."

Under our precedent, the terms of office of our various judges constitute a single subject. Thus, in this hypothetical, the presumption is rebutted, even though more than one section of the Constitution would be altered by the initiative.

### B.

Applying this rule to initiatives, future proponents would have a guide as to their prospects for compliance with the single-subject rule. Moreover, the proponents, therefore, would be the masters of their fate, knowingly creating a greater risk of violating the single-subject requirement when they decide to attempt to alter more than one section of our constitution under a single initiative.

However, under my proposed rule, because Initiative # 29 seeks not only to repeal the conflicting sections of Article VI pertaining to judicial qualifications, but also includes amendments to (1) alter the term of office of judicial officers, and (2) amend Colorado Constitution article VI, sections 7, 8, 10, 20, and 23, the presumption against a single subject exists. And it is that presumption, then, that proponents would be required to rebut. In this case, however, that is where proponents fail.

Altering the term of office of a public official is not necessarily connected to qualifications, such as residence or years in practice. Even looking to the purpose of such an initiative, I do not see the same connection or relationship between the number of years a person serves in an office and the necessary prerequisites to serve, even a day, in the office. Therefore, at a minimum, in my view, separate initiatives would still be required: (1) to alter the manner by which persons are qualified for judicial office and (2) to alter the term such persons are to serve in or are appointed to judicial office. Similarly, a separate subject would be addressed by a provision to alter the composition of the membership of the judicial discipline commission. This is so because the qualifications for a judicial officer—that he or she be a qualified elector of the district, licensed to practice law in Colorado for not less than five years and

reside within the particular district, *see, e.g.,* Colo. Const. art. VI, § 11—are not at all necessarily connected to how long that individual may serve as a judge.

### III.

While stating this proposed rule, I want to make one thing perfectly clear: Our decision today does not bar the proponents from accomplishing their stated goal. Rather, we only conclude that it cannot be done in this manner. Hence, I do not mean to imply that the substance of Initiative # 29 could not be accomplished, but to do so, the single-subject mandate of the Colorado constitution requires the proponents of the initiative to author and propose to the voters several discrete initiatives, not just one widesweeping initiative. Requiring a separate initiative for each of the categories of change Initiative # 29 seeks to effect, as described by the majority, does not create an impossible bar for the proponents over which they can never pass. Rather, it ensures that the purposes behind prohibiting multiple subject initiatives are applied in the practical sense, that is, to avoid confusion, fraud, and surprise among voters, and not just serve as theoretical posturing.

### IV.

Finally, I note that, in my view, the court need not have reached additional issues raised by petitioner after having concluded that Initiative # 29 violated the single-subject mandate. *See In re the Title, Ballot Title and Submission Clause, and Summary for 1997–1998 # 64*, 960 P.2d at 1196 (where initiative violated single subject mandate, petitioner's other contentions were not addressed); *In re Ballot Title "1997–98 # 30"*, 959 P.2d 822, 827 (Colo.1998) (same). Therefore, I do not join in part II. B. of the majority opinion.

### V.

Accordingly, applying the standard I propose to Initiative # 29, I specially concur in the judgment of the court. However, I disagree with and dissent from those portions of the majority opinion that subscribe to a con-

struction of the term "qualifications" that, in my view, is more broad than currently appears in our constitution. Nonetheless, I join in the judgment of the court.