**672**

In the MATTER OF THE TITLE, BALLOT TITLE AND SUBMISSION CLAUSE, AND SUMMARY FOR 1997–1998 # 75

Buford RICE and Richard Macravey, Petitioners,

v.

Jim BRANDON, John Berry, Jan Jones, and Steve Mcdowel, Respondents,

and

Victoria Buckley, Richard Westfall, and Rebecca Lennahan, Title Board.

No. 98SA155.

Supreme Court of Colorado, En Banc.

June 15, 1998.

Issacson, Rosenbaum, Woods & Levy, P.C., Mark G. Grueskin, Melissa K. Thompson, Hill & Robbins, David Robbins, Denver, for Petitioners.

John Berry, Denver, for Respondents.

Gale A. Norton, Attorney General, Martha Phillips Allbright, Chief Deputy Attorney General, Richard A. Westfall, Solicitor General, Paul Farley, Deputy Attorney General, Maurice G. Knaizer, Deputy Attorney General, State Services Section, Denver, for Title Board.

Justice KOURLIS delivered the Opinion of the Court.

The petitioners are registered electors who brought this original proceeding pursuant to section 1–40–107(2), 1 C.R.S. (1997), to review the action taken by the initiative title setting board (the Board) in fixing a title, ballot title and submission clause, and summary (collectively, "titles and summary")[1] for a proposed statutory amendment designated "1997–98 # 75" (the Initiative). We hold that the titles and summary are not unfair or misleading, and that the fiscal impact statement is adequate. We therefore approve the action of the Board.

**I.**

The Initiative seeks to add a new paragraph to section 37–92–502(5), 10 C.R.S. (1997).[2] It would require the installation of

1. The titles and summary set by the Board are attached as an appendix to this opinion.

2. The Initiative provides as follows:
   Be It Enacted by the People of the State of Colorado:

37–92–502(5), Colorado Revised Statutes, is amended BY THE ADDITION OF A NEW PARAGRAPH to read:
   **37–92–502. Orders as to waste, diversions, distribution of water.** (5)(c) ON OR BEFORE

water flow meters by April 1, 1999, on any well not exempt under sections 37–92–601 and –602, 10 C.R.S. (1997), in the unconfined aquifer of Water Division 3 in the San Luis Valley. It further provides that the meters be certified and read monthly by the state engineer at the owner's expense. Finally, the Initiative provides for enforcement of the provision by the state engineer. The petitioners raise two objections to the Board's titles and summary: (1) the summary is misleading because it does not define the term "nonexempt well" used in the titles and summary; and (2) the fiscal impact statement is misleading because it refers to a taxpayer refund but is unclear regarding which taxpayers would receive a refund as a result of the revenues collected.

## II.

■ The petitioners assert that the Board's omission of a definition of the term "nonexempt well" in its summary was an abuse of discretion because the term is an obscure one not within the common knowledge of most voters. We disagree. The scope of our review

is limited to ensuring that "the title, ballot title and submission clause, and summary fairly reflect the proposed initiative so that petition signers and voters will not be misled into support for or against a proposition by reason of the words employed by the Board." *In re Proposed Initiative on Sch. Pilot Program,* 874 P.2d [1066,] 1070 [ (Colo.1994) ] (citations omitted).

In conducting such review we will engage in all legitimate presumptions in favor of the propriety of the Board's actions. *In re Proposed Initiative "Auto. Ins. Coverage",* 877 P.2d 853, 856 (Colo.1994). We do not address the merits of a proposed initiative, nor do we interpret its language or predict its application if adopted by the

electorate. *In re Petition on Campaign and Political Fin.,* 877 P.2d 311, 313 (Colo. 1994).

*In re Proposed Petitions,* 907 P.2d 586, 590 (Colo.1995). The term "nonexempt well" as used in the titles and summary is neither defined, nor does it even appear, in the Initiative itself. The term "nonexempt well" is a shorthand reference for the phrase actually used in the Initiative of "any well not exempt pursuant to sections 37–92–601 and 37–92–602." Section 37–92–602, 10 C.R.S. (1997) provides that certain wells with specified and limited production, used for household, fire protection, and domestic purposes, among others, are exempt from some, but not all, of the provisions of article 92 of title 37, the "Water Right Determination and Administration Act of 1969."

The definition of "exempt wells" under section 37–92–602 is complex. Therefore, it would be impossible to define "nonexempt well" within the titles and summary of the Initiative without a detailed statutory explanation. To the extent that the phrase "any well not exempt pursuant to sections 37–92–601 and 37–92–602" is unclear, its definition must await future legislative and judicial construction and interpretation. *See In re Petition on Campaign and Political Fin.,* 877 P.2d at 313. Under these circumstances, we conclude that the Board did not abuse its discretion in using the term "nonexempt well," without further definition of that term.

## III.

■ The petitioners also claim that the Board's fiscal impact statement is misleading because it contains a confusing reference to "taxpayers" who would receive a refund if the Initiative is enacted and implemented. Pursuant to section 1–40–106(3)(a), 1 C.R.S. (1997), the Board received the assistance of

APRIL 1, 1999, ANY WELL NOT EXEMPT PURSUANT TO SECTIONS 37–92–601 AND 37–92–602 IN THE UNCONFINED AQUIFER IN WATER DIVISION 3 SHALL BE EQUIPPED WITH A FUNCTIONAL WATER FLOW METER, CERTIFIED BY THE STATE ENGINEER, SUCH WATER FLOW METERS SHALL BE READ MONTHLY BY THE STATE ENGINEER AT THE WELL OWNER'S EXPENSE. THE STATE ENGINEER SHALL

PREVENT THE OPERATION OF ANY WELL THAT IS FOUND NOT TO HAVE A FUNCTIONING WATER FLOW METER UNTIL SUCH TIME THAT A FUNCTIONING WATER FLOW METER IS INSTALLED AND CERTIFIED BY THE STATE ENGINEER AT THE WELL OWNER'S EXPENSE. THIS PARAGRAPH (c) WAS ADOPTED BY A VOTE OF THE PEOPLE AT THE GENERAL ELECTION IN 1998.

the Office of State Planning and Budgeting (OSPB) in preparing the fiscal impact statement for the Initiative. The Initiative itself contains no reference to a refund, but the Board's fiscal impact statement, contained in the summary, states in part:

The Office of State Planning and Budgeting has determined that the measure would have a negative effect on the state budget of $864,868, annually. This amount consists of $638,839 for meter-reading and billing, $76,029 for operating costs, and $150,000 for legal services from the attorney general's office. There will also be a one-time capital outlay cost of $88,909. While this amount would be paid by well owners to the State Engineer as fees for meter-reading, these additional fees will be in excess of the state spending limit under Article X, Section 20 of the Colorado Constitution for the next several years. *Therefore, the state will have to refund the new fee revenues to the taxpayers and absorb the cost of providing meter-reading services.* The Office of State Planning and Budgeting has estimated the [sic] unless uncollectible fees are passed on to well owners as additional costs in future years, the net annual cost to the state could be as high as $86,000.

(Emphasis added.) The petitioners challenge the reference to "taxpayers" in general. They are concerned that voters will assume that "taxpayers" refers to taxpayers statewide rather than local taxpayers directly affected by the Initiative. The Initiative itself makes no reference to a refund. A refund generated by operation of article X, section 20 of the Colorado Constitution (Amendment 1), is only a possibility. The fiscal impact statement mentions it to clarify that there will be statewide costs notwithstanding the requirement that affected well owners pay the expenses associated with the water flow meters. This type of clarification falls within the Board's discretion.

The summary must ordinarily include a fiscal impact statement in order to inform the electorate of the fiscal implications of the proposal. The Board is vested with discretion regarding how to best describe the fiscal impact without creating prejudice for or against the proposal.

*In re Proposed Initiative on "Trespass—Streams With Flowing Water.",* 910 P.2d 21, 26 (Colo.1996) (citations omitted). If and when a refund is appropriate, the General Assembly, not the Board or this court, will determine who receives it. The fiscal impact statement, therefore, adequately describes the general proposition that a taxpayer refund may be implicated.

## IV.

Accordingly, we affirm the action of the Board in setting the titles and summary.

### Appendix

Proposed Initiative "1997—98 # 75"[1]

*The title as designated and fixed by the Board is as follows:*

AN AMENDMENT TO THE COLORADO REVISED STATUTES CONCERNING A REQUIREMENT FOR THE INSTALLATION OF WATER FLOW METERS ON ANY NONEXEMPT WELL IN THE UNCONFINED AQUIFER IN WATER DIVISION 3 ON OR BEFORE APRIL 1, 1999, AND, IN CONNECTION THEREWITH, REQUIRING THAT THE WATER FLOW METERS BE CERTIFIED BY THE STATE ENGINEER; REQUIRING THE STATE ENGINEER TO READ THE WATER FLOW METERS MONTHLY AT THE WELL OWNER'S EXPENSE; AND DIRECTING THE STATE ENGINEER TO PREVENT THE OPERATION OF ANY WELL THAT DOES NOT HAVE A FUNCTIONING WATER FLOW METER.

*The ballot title and submission clause as designated and fixed by the Board is as follows:*

SHALL THERE BE AN AMENDMENT TO THE COLORADO REVISED STATUTES CONCERNING A REQUIREMENT FOR THE INSTALLATION OF WATER FLOW METERS ON ANY NONEXEMPT WELL IN THE UNCONFINED AQUI-

1. Water Flow Meters

FER IN WATER DIVISION 3 ON OR BEFORE APRIL 1, 1999, AND, IN CONNECTION THEREWITH, REQUIRING THAT THE WATER FLOW METERS BE CERTIFIED BY THE STATE ENGINEER; REQUIRING THE STATE ENGINEER TO READ THE WATER FLOW METERS MONTHLY AT THE WELL OWNER'S EXPENSE; AND DIRECTING THE STATE ENGINEER TO PREVENT THE OPERATION OF ANY WELL THAT DOES NOT HAVE A FUNCTIONING WATER FLOW METER?

*The summary prepared by the Board is as follows:*

This measure amends the Colorado Revised Statutes by the addition of a new paragraph (c) to subsection (5) of section 37–92–302, Colorado Revised Statutes, requiring the installation of water flow meters on any non-exempt well in the unconfined aquifer in water division 3 in the San Luis Valley on or before April 1, 1999.

The measure requires that the water flow meters installed be certified by the State Engineer.

The measure requires the State Engineer to read the water flow meters monthly at the well owner's expense and to prevent the operation of any well that does not have a functioning water flow meter until one is installed and certified by the State Engineer at the well owner's expense.

The Department of Local Affairs estimates that the fiscal impact of this measure to local governments in Water Division 3 would be $3,500 annually to implement meter-reading operations. It would also cost $30,000 annually for local governments to replace water meters that wear out.

The Office of State Planning and Budgeting has determined that the measure would have a negative effect on the state budget of $864,868, annually. This amount consists of $638,839 for meter-reading and billing, $76,029 for operating costs, and $150,000 for legal services from the attorney general's office. There will also be a one-time capital outlay cost of $88,909. While this amount

would be paid by well owners to the State Engineer as fees for meter-reading, these additional fees will be in excess of the state spending limit under Article X, Section 20 of the Colorado Constitution for the next several years. Therefore, the state will have to refund the new fee revenues to the taxpayers and absorb the cost of providing meter-reading services.

