In the Matter of the TITLE, BALLOT TITLE AND SUBMISSION CLAUSE, AND SUMMARY FOR 1999–2000 # 104,

Bennett S. Aisenberg, Petitioner,

v.

Douglas Campbell and Mark Dorn, Respondents,

and

Donetta Davidson, Rebecca Lennahan, and Michael McLachlan, Title Board.

No. 99SA165.

Supreme Court of Colorado, En Banc.

Nov. 1, 1999.

Susan E. Burch, Denver, Colorado, Attorney for Petitioner.

Douglas Campbell, Pro Se, Mark Dorn, Pro Se, Arvada, Colorado.

Ken Salazar, Attorney General, Maurice G. Knaizer, Deputy Attorney General, State Services Section, Denver, Colorado, Attorneys for Title Board.

Justice RICE delivered the Opinion of the Court.

In this original proceeding brought pursuant to section 1–40–107(2), 1 C.R.S. (1999), Petitioner, Bennett S. Aisenberg, seeks review of the Initiative Title Setting Board's [1] ("Title Board" or "Board") May 5, 1999 action in fixing the title, ballot title and submission clause, and summary ("titles") for a proposed ballot initiative designated "1999–2000 # 104" ("the Initiative").[2] Initiative # 104 proposes to amend Article VI of the Colorado Constitution by adding a new Section 6 to this article,[3] and to repeal several other provisions. Because we conclude that the Initiative contains more than one subject in violation of Article V, Section 1(5.5) of the Colorado Constitution, and that the titles set by the Board do not clearly and correctly express the subject of the proposal, we reverse the action of the Board.

## I. FACTS

Initiative # 104 proposes extensive changes to matters concerning Colorado judi-cial personnel. First, the Initiative would institute new requirements regarding the nomination, appointment, removal, and retention of active county, district, court of appeals, and supreme court judges,[4] and impose new limits on the duration of a judicial term of office and the number of terms a judicial officer may serve. In particular, the new Section 6 would effectuate several changes, including: (1) a provision imposing term limits upon judges by limiting them to a maximum term of four years and providing that no judge may serve more than three future terms at any given judicial level; [5] (2) a provision stating that a future partial term of one year or more constitutes a full term; (3) a provision stating that the governor shall appoint all future active county, district, probate, juvenile, water, court of appeals, and supreme court judges, and senior judges for service up to 60 court days in any 12 months; [6] (4) a provision barring any newly appointed judge from taking office without senate approval following a public hearing held at least ten days after public notice; (5) a provision requiring all senate-approved appointees to stand for a retention vote in the next November election; (6) a provision requiring any judge retained by less than a sixty percent vote to face an election in November (the resulting one-year term would count as a full term); (7) a provision suspending without pay any judge convicted of a .

1. When originally filed, the suit was brought against Board members Victoria Buckley, Rebecca Lennahan, and Michael McLachlan, in their official capacity. However, since the filing of the suit, the membership of the Board has changed. By operation of law, "[w]hen a public officer is a party to an appeal or other proceedings in the appellate court in his official capacity and during its pendency dies, resigns, or otherwise ceases to hold office, the action does not abate and his successor is automatically substituted as a party." C.A.R. 43(c)(1).

2. The title, ballot title and submission clause, and summary of Initiative # 104 are attached hereto as an appendix.

3. The former Article VI, Section 6, entitled "Election of judges," was repealed on November 8, 1966.

4. The Initiative defines the term "judges" to include justices and magistrates.

5. The Initiative proposes to repeal Article VI, Section 7, which sets forth a ten-year term of office for supreme court justices, and the second sentence of Article VI, Section 10(2), which provides that the term of office for a district judge shall be six years. The term of office for county court judges is already four years. See Colo. Const. art. VI, § 16. The term of office for court of appeals judges, which is not set forth in the constitution but in a statutory provision, is eight years. See § 13–4–104(1), 5 C.R.S. (1999).

6. The Initiative would repeal Article VI, Section 20(1), which provides that a judicial vacancy "shall be filled by appointment of the governor" from a nominating commission list of two or three nominees. It would also repeal Sections 14 and 15 of Article VI, which provide that vacancies in the probate and juvenile courts of the City and County of Denver "shall be filled as provided in section 20 of this article."

crime or subject to a negative finding by the Commission on Judicial Discipline and requiring him or her to stand for retention in the next November election to be held at least ninety days after the conviction or finding; (8) a provision requiring judges who are the subject of citizen-initiated removal petitions signed by the requisite number of electors to stand for a retention vote in the next November election at least ninety days after such petitions are filed; (9) a ban against active or senior judges from serving – following mandatory retirement, removal by discipline or election, resignation with a retention or removal election pending, or defeat for retention – without the written consent of all parties to a case or after being term-limited; (10) a provision requiring calendar year information concerning an incumbent's caseload, case resolution time, continuances, hours of attendance, and sentencing information to be made public and computer accessible by the following March 1; and (11) a provision requiring ballot information booklets and mailed election notices to contain the aforementioned calendar year information, as well as any criminal conviction or negative finding by the Commission on Judicial Discipline, a statement in favor of retention or for removal, and a "summary" of all comments against retention that may be filed by any person or group.

Second, the Initiative repeals the present requirement that judges be licensed attorneys, providing that judicial appointees need only be "qualified electors" in a given judicial district.

Third, the Initiative modifies the powers of the Commission on Judicial Discipline by: (1) providing that all future Commission complaints, papers, hearings, and findings are to be public and accessible via computer within a limited time frame; (2) altering the confidentiality afforded to complainants and witnesses; and (3) depriving the Commission of its disciplinary discretion. The Initiative also requires that all appellate opinions be made public and computer accessible within this time frame.

Fourth, the Initiative prohibits the "mention or publication" of reports prepared by the Judicial Performance Commission.

Fifth, the Initiative contains directives regarding the enforcement of its substantive provisions. Paragraph (4) of the new Section 6 states that its provisions are subject to the following enforcement specifications: (1) the Initiative is to be strictly construed; good faith and substantial compliance are insufficient; (2) the provisions of the Initiative are severable and self-executing; and (3) the provisions of the Initiative shall not be balanced or harmonized with, but shall supersede conflicting laws. Paragraph (4) of the ballot text further provides that any person or group shall have standing to enforce Section 6 by originally filing a suit before the supreme court. These suits, in turn, must be orally argued, decided, and ruled upon within *sixty* days of filing, and successful petitioners are to be awarded attorney's fees and costs.

Finally, the Initiative proposes to repeal the following sections of Article VI of the Colorado Constitution: 7, 8, 11, 14, 15, 20(1), 20(3) & 23(3)(g), and the second sentence of 10(2). Three of these sections are of particular significance for purposes of the instant case. First, Article VI, Section 8 states that a person is not eligible to be a supreme court justice unless he or she is a qualified elector of the State of Colorado and has been licensed to practice law in Colorado for at least five years. Second, Article VI, Section 11 imposes similar eligibility requirements for district court judges. Third, the Initiative repeals Article VI, Section 23(3)(g), which provides that all papers filed with and all proceedings before the Commission on Judicial Discipline are confidential, and that all papers filed with and all testimony presented before the Commission are privileged.

The Board did not fix titles for the proposal at its first meeting on April 21, 1999, because one of the two Board members in attendance thought that the proposal contained multiple subjects. On May 5, 1999, the Board reconvened for a rehearing on the proposal. Notably, the Board member who voted against the proposal at the initial hearing was not present at the rehearing. Both Board members in attendance agreed that the proposal contained only a single subject;

therefore, the Board's initial action was reversed and titles were fixed.[7]

## II. SINGLE–SUBJECT/CLEAR TITLES REQUIREMENT

Petitioner argues that this Initiative is unconstitutional because: (1) the Initiative contains more than one subject in violation of Subsection 5.5 of Section 1 of Article V of the Colorado Constitution, and (2) the titles set by the Board do not clearly and correctly express the subject of the Initiative. We agree; therefore, we now reverse the Board's action.

■ We noted in our recent analysis of an unrelated initiative in *In re Proposed Initiative for 1999–2000 # 25*, 974 P.2d 458, 460–61 (Colo.1999), that two closely interdependent inquiries are germane to our review of a proposed initiative: one commanding that the subject treated in the body of the proposed initiative be clearly expressed in its titles and the other forbidding the union of separate and distinct subjects in the same proposed initiative. The duality of this requirement is illustrated by the following statement this court made over 100 years ago in *In re Breene*, 14 Colo. 401, 404, 24 P. 3, 3–4 (1890): [8]

> [The constitutional provision] embraces two mandates, viz.: one forbidding the union in the same legislative bill of separate and distinct subjects, and the other commanding that the subject treated in the body of the [proposal] shall be clearly expressed in its title. Each of these mandates is designed to obviate flagrant evils connected with the adoption of laws. The former prevents joining in the same [proposal] disconnected and incongruous matters. The purpose of the latter is ... "to prevent the passage of unknown and alien subjects, which might be coiled up in the folds of the [proposal]."

7. On May 10, 1999, Petitioner filed this proceeding seeking review of the Board's action and a motion for rehearing challenging the determination that the proposal contained a single subject. The proponents of the proposal also filed a motion for rehearing challenging the wording of the title. Only two Board members were in attendance at the May 19, 1999 rehearing that followed. On a tie vote, Petitioner's motion for

*Id.* Accordingly, we examine the interrelated clear titles and single-subject requirement in turn.

### A. Single–Subject Requirement

■ The Colorado Constitution provides that the Board may not set the titles of a proposed Initiative, or submit it to the voters, if the Initiative contains multiple subjects. *See In re Proposed Initiative "Petitions,"* 907 P.2d 586, 588 (Colo.1995). Article V, Section 1(5.5), which sets forth the single-subject requirement for initiatives, provides, in pertinent part:

> *No measure shall be proposed by petition containing more than one subject, which shall be clearly expressed in its title;* but if any subject shall be embraced in any measure which shall not be expressed in the title, such measure shall be void only as to so much thereof as shall not be so expressed. If a measure contains more than one subject, such that a ballot title cannot be fixed that clearly expresses a single subject, no title shall be set and the measure shall not be submitted to the people for adoption or rejection at the polls.

*Id.* (emphasis added). A proposal that has "at least two distinct and separate purposes which are not dependent upon or connected with each other" violates the foregoing single-subject requirement. *In re "Public Rights in Waters II.",* 898 P.2d 1076, 1078–79 (Colo.1995); *see, e.g., In re Proposed Initiative for 1997–1998 # 64,* 960 P.2d 1192, 1196 (Colo.1998); *In re Amend TABOR 25,* 900 P.2d 121, 125 (Colo.1995); *People ex rel. Elder v. Sours,* 31 Colo. 369, 403, 74 P. 167, 177 (1903); *In re Breene,* 14 Colo. at 404, 24 P. at 3 (interpreting single-subject requirement as prohibiting a legislative act from addressing "disconnected and incongruous matters").

rehearing was denied, whereas the proponents' motion was granted in part and denied in part. A revised petition for review was filed before this court on May 24, 1999.

8. *Breene* addressed the single-subject requirement in the context of legislation.

Furthermore, a proposed initiative contains multiple subjects not only when it proposes *new* provisions constituting multiple subjects, but also when it proposes to *repeal* multiple subjects. *See In re Proposed Initiative for 1997–1998 # 64,* 960 P.2d at 1196; *In re Proposed Initiative "1996–4,"* 916 P.2d 528, 533 (Colo.1996).

## B. Clear Titles Requirement

The statutes governing the initiative process established the following standard for clear titles:

> In setting a title, the title board shall consider the public confusion that might be caused by misleading titles and shall, whenever practicable, avoid titles for which the general understanding of the effect of a "yes" or "no" vote will be unclear.

§ 1–40–106(3)(b), 1 C.R.S. (1999). This statutory section further provides that the ballot titles "shall correctly and fairly express the true intent and meaning" of the constitutional amendment, and "shall unambiguously state the principle of the provision sought to be added, amended or repealed." *Id.; see also In re Proposed Initiative for 1999–2000 No. 29,* 972 P.2d 257, 266 (Colo.1999).

In 1994, Article V, Section 1(5.5) incorporated the clear titles requirement for initiatives into the Colorado Constitution, stating that "[n]o measure shall be proposed by petition containing more than one subject, which shall be clearly expressed in its title." Colo. Const. art. V, § 1(5.5).

## C. Duties of the Title Board and Applicable Standard of Review

In order to facilitate the initiative process, the General Assembly assigned duties to the Title Board which include: (1) "designat[ing] and fix[ing] a proper fair title for each proposed law or constitutional amendment, together with a submission clause," § 1–40–106(1); (2) "prepar[ing] a clear, concise summary of the proposed law or constitutional amendment" which "shall be true and impartial and shall not be an argument, nor likely to create prejudice, either for or against the measure," § 1–40–106(3)(a); (3) "consid-

er[ing] the public confusion that might be caused by misleading titles and ... whenever practicable, avoid[ing] titles for which the general understanding of the effect of a 'yes' or 'no' vote will be unclear," § 1–40–106(3)(b); (4) not permitting "the treatment of incongruous subjects in the same measure," § 1–40–106.5(1)(3)(I); and (5) acting to "prevent surreptitious measures and appris[ing] the people of the subject of each measure by the title" in order to "prevent surprise and fraud from being practiced upon voters," § 1–40–106.5(1)(e)(II). *See In re Proposed Initiative for 1999–2000 No. 29,* 972 P.2d at 260. Thus, the General Assembly has squarely placed the responsibility for carrying out the dual mandate of Article V, Section 1(5.5) on the Title Board.

The Board's function is extremely important in light of this court's limited scope of review of the Board's actions. We will not address the merits of a proposed initiative, interpret its language, or predict its application. *See In re Petition on Campaign & Political Fin.,* 877 P.2d 311, 313 (Colo.1994); *In re Proposed Initiative on Fair Treatment of Injured Workers,* 873 P.2d 718, 719–20 (Colo.1994); *In re Proposed Election Reform Amend.,* 852 P.2d 28, 31–32 (Colo.1993). In conducting such a review, the actions of the Board are presumptively valid. *See Say v. Baker,* 137 Colo. 155, 159, 322 P.2d 317, 319 (1958); *see also In re Proposed Initiative for 1997–1998 No. 105,* 961 P.2d 1092, 1097 (Colo. 1998); *In re Proposed Initiative for 1997–1998 No. 75,* 960 P.2d 672, 673 (Colo.1998); *In re Proposed Initiative "Automobile Insurance Coverage,"* 877 P.2d 853, 856 (Colo. 1994) (noting that reviewing court is required to engage all legitimate presumptions in favor of the propriety of the Board's actions).

## D. Summary of Prior Versions of this Initiative

Three prior versions of this Initiative have been presented to us for review. On June 22, 1998, we issued an opinion regarding Initiative # 64, one of the first versions of the instant Initiative. *See In re Proposed Initiative for 1997–1998 # 64,* 960 P.2d 1192 (Colo.1998). Therein, we held that Initiative # 64 violated the single-subject requirement

because it pertained not only to the qualifications of persons for judicial office, but also repealed the constitutional requirement that each judicial district have at least one district court judge, deprived the City and County of Denver of control over Denver County court judgeships, immunized persons who criticize a judicial officer regarding his or her qualifications from any liability, and altered the composition and powers of the Judicial Discipline Commission. *See id.* at 1192–2000.

One week later, we reviewed and rejected on single-subject grounds one of the proponents' several redrafted versions of the Initiative, entitled Initiative # 95. *See In re Proposed Initiative for 1997–1998 No. 95,* 960 P.2d 1204 (Colo.1998). In addition to the aforementioned subjects that we found in Initiative # 64, Initiative # 95 proposed to eliminate the power of home rule cities to control the election, appointment, and retention of municipal court judges within their jurisdiction, and proposed to enlarge the jurisdiction of the Commission on Judicial Discipline. *See id.* at 1206–09.

On February 16, 1999, we held that yet another of the proponents' redrafted versions of the proposal, entitled Initiative # 29, violated the single-subject/clear titles requirement. *See In re Proposed Initiative for 1999–2000 No. 29,* 972 P.2d at 268. Specifically, we found that the titles of Initiative # 29 failed to fairly, clearly, and accurately reflect the meaning of the term limits proposal therein, because its stated application to "*certain* state court judges and justices" was misleading and promoted voter confusion. *Id.* at 267–68. Moreover, we found that Initiative # 29 contained two impermissible multiple subjects: the proposal not only would have changed the qualifications to serve as a member of the Commission on Judicial Discipline, but also would have changed the jurisdiction of county judges for the City and County of Denver. *See id.* at 262–65.

### III. SINGLE–SUBJECT/CLEAR TITLES ANALYSIS

Turning to an analysis of the Initiative presently before us, we hold that the proposed Initiative contains multiple subjects.

Further, we hold that the titles of the Initiative fail to fairly, clearly, and correctly express the true intent and meaning of Initiative # 104.

### A. SINGLE–SUBJECT REQUIREMENT

Petitioner alleges that, in addition to subjects which this court has found to violate the single-subject requirement in the past, this proposal contains, at the least, the following additional separate subjects:

1. The interference with the administrative duties of the chief justice concerning the "prompt disposition of judicial business" by limiting the period of service of senior judges and by requiring gubernatorial appointment and senate . confirmation of senior judges – compare article VI § 5(3) with (2) of the proposal; ·

2. Interference with the discipline powers of the judicial discipline commission and this Court by requiring suspension of judges without pay upon any negative finding of the commission or any misdemeanor or felony conviction – compare article VI, § 23(3)(e)-(f) with (3)(a) of the proposal;

3. Establishment of a detailed petitioned recall of judges at variance with constitutional recall – compare article XXI with (3)(a) of the proposal;

4. Establishment of detailed provisions governing ballot content and voter information in recall and retention elections at variance with existing provisions – compare article II, § 10, article V, § 1(5.5), article VII, § 11, article XIX, § 2(2)-(3), article XXI, part 9 of article 7 of title 1, C.R.S[.], and part 1 of article 12 of title 1, C.R.S. with (3)(a) of the proposal;

5. Impairment of the function of the judicial discipline commission by requiring all future complaints, papers, hearings, and findings to be public and c[o]mputer accessible – compare article VI, § 23(3)(g) with (3)(b) of the proposal;

6. Nullification of the purpose of the judicial performance commission function by prohibiting mention or publication

.of any judicial performance commission review – compare article II, § 10, § 13–5.5–101, C.R.S., § 13–5.5–103(1)(i), C.R.S., § 13–5.5–105(1)(b), C.R.S., and [§] 13–5.5–106, C.R.S. with (3)(b) of the proposal;

7. Interference with the prompt disposition of judicial business and the conduct of litigation by requiring consent of all parties in a case to a senior judge presiding in that case—compare article VI, § 5(3) with (4) of the proposal; and

8. Abolition of the probate court and the juvenile court in the City and County of Denver – compare article VI, §§ 14–15 with section 2 of the proposal.

Pet'r Brief at 11–12.

### 1. Denver "County Judges"

The text of the Initiative proposes term limits for all active county judges. It further states that the governor shall appoint all future active county judges. As we have previously held, because the language of the Initiative encompasses Denver county court judges, it includes a second subject.

By way of background, Article VI, Section 26 of the Colorado Constitution provides:

The provisions of sections 16, 20, 23, 24 and 25 hereof shall not be applicable to judges of the county court of the City and County of Denver. *The number, manner of selection, qualifications, term of office, tenure, and removal of such judges shall be as provided in the charter and ordinances of the City and County of Denver.*

Colo. Const. art. VI, § 26 (emphasis added). This home rule provision apportions independent authority over county court judgeships in the City and County of Denver. *See, e.g., In re Proposed Initiative for 1999–2000 No. 29,* 972 P.2d at 264; *In re Proposed Initiative for 1997–1998 # 64,* 960 P.2d at 1198; *Francis v. County Court,* 175 Colo. 308, 314–17, 487 P.2d 375, 378–79 (1971) (treating Article VI, Section 26 as a home rule provision). Generally, home rule provisions reflect an intent to vest in home rule cities "the plenary power of self-government" over matters of local concern. *See Denver Urban Renewal*

*Auth. v. Byrne,* 618 P.2d 1374, 1380–81 (Colo. 1980); see also Colo. Const. art. XX, § 6 ("It is the intention of this article to grant and confirm to the people of all municipalities coming within its provisions the full right of self-government in both local and municipal matters. . . .").

In several prior decisions, this court has held that an initiative which includes sections altering the control over Denver county and municipal court judgeships violated the single-subject requirement. *See In re Proposed Initiative for 1999–2000 No. 29,* 972 P.2d at 264–65; *In re Proposed Initiative for 1997–1998 # 64,* 960 P.2d at 1198 (finding that prior version of the instant Initiative contained multiple subjects because repeal of Article VI, Section 26 did not share a unifying or common objective with those provisions changing the qualifications of judicial officers).

Initiative # 104 again proposes an implied repeal of Section 26 by reallocating the City and County of Denver's governmental authority and control over its county judges to the state. As such an alteration of the City and County of Denver's constitutional power over its county court merely perpetuates the problem that we previously identified, we find that Initiative # 104 once again constitutes a discrete and independent subject from that of the qualifications, removal, and retention of judges.

### 2. Commission on Judicial Discipline

Petitioner alleges that the Initiative creates a second subject through language altering the powers of the Judicial Discipline Commission. We agree.

Initiative # 104 would alter the following procedures applicable to the proceedings of the Commission on Judicial Discipline: (1) it would require the disclosure of all documents, regardless of whether the Commission reaches a "negative finding"; (2) it would alter the confidentiality afforded to complainants and witnesses in proceedings before the Commission; and (3) it would deprive the Commission of its disciplinary discretion by imposing a mandatory requirement that all judges subject to a negative disciplinary finding be suspended without

pay, pending a retention election the following November.

The aforementioned changes would be the result of Initiative # 104's repeal of Article VI, Section 23(3)(g), which provides, *inter alia*:

> Prior to the filing of a recommendation to the supreme court by the commission against any justice or judge, all papers filed with and proceedings before the commission on judicial discipline or masters appointed by the supreme court, pursuant to this subsection (3), shall be confidential, and the filing of papers with and the giving of testimony before the commission or the masters shall be privileged. . . .

In lieu of Section 23(3)(g), Initiative # 104 provides for the mandatory public disclosure of all disciplinary proceedings and findings, regardless of the outcome of said proceedings, and of all documents (including all complaints and papers) filed in connection with same.

Our prior decisions regarding other versions of the instant Initiative have repeatedly held that provisions which alter the powers of the Commission on Judicial Discipline constitute an additional subject. *See In re Proposed Initiative for 1997–1998 # 64*, 960 P.2d at 1199–1200 (finding that alteration of Commission powers was impermissible because the Commission on Judicial Discipline "is an independent constitutional body whose members are not 'judicial officers' "); *accord In re Proposed Initiative for 1999–2000 No. 29*, 972 P.2d at 263; *In re Proposed Initiative for 1997–1998 No. 95*, 960 P.2d at 1208–09. We again hold that provisions which alter the powers of the Commission on Judicial Discipline constitute an additional subject.

### 3. Senior Judges

■ We turn now to Petitioner's assertions that the provisions within the Initiative which deal with senior judges create distinct and separate subjects. The three provisions within the Initiative dealing specifically with senior judges (1) limit the time of service of senior judges, (2) alter the appointment process for senior judges, and (3) require consent from the parties who appear before senior judges. Petitioner alleges that each of

these provisions interferes with the administrative duties of the chief justice and the prompt disposition of judicial business, thus creating an additional subject. Respondents, however, argue that the language within the Initiative concerning senior judges fits within the single subject presented by the measure: the qualification of state judicial officers.

We agree that the provisions within the Initiative concerning senior judges do not present a separate subject unrelated to the qualification of state judicial officers. The Initiative seeks to change the method by which judicial personnel in general are qualified, appointed and retained; senior judges are judicial personnel. We have previously held that matters relating to the qualification of judges are appropriately embraced within a single initiative. *See In re Proposed Initiative for 1997–1998 # 64*, 960 P.2d at 1197. Accordingly, the Title Board appropriately determined that the language within the Initiative that referred to senior judges constitutes part of the single subject of the qualifications of state judicial personnel.

### 4. Judicial Performance Commission

■ Petitioner also asserts that this Initiative creates a separate subject by nullifying the purpose of the Judicial Performance Commission and by limiting the kind of information available to voters about judges during recall and retention elections.

Specifically, Initiative # 104 calls for "publicizing reports on each judge"; however, it specifically bars the "mention or publication" of any reports prepared by the Judicial Performance Commission. Petitioner argues that this bar on the publication of Commission reports constitutes an additional subject beyond the selection, retention, and removal of judges because it renders the purposes and duties of the Judicial Performance Commission moot, as set forth at section 13–5.5–101 to –109, 5 C.R.S. (1998). We disagree.

The Judicial Performance Commission is the product of an effort by the Colorado Legislature to establish a uniform system of evaluating judicial performance in order to provide voters in judicial retention elections with fair, responsible, and constructive infor-

mation about judicial performance and to provide judges with useful information concerning their own performance. Sections 13–5.5–103(1)(i) and 13–5.5–105(1)(b) require the Commission to draft, produce, and publicly distribute a narrative profile on each justice, court of appeals judge, district judge, county judge, and magistrate. *See also* § 13–5.5–106 (requiring disclosure of performance reports to judges and to the public).

By ensuring that the aforementioned performance reports, even if prepared, are never released to the public, Petitioner argues that the Initiative effectively nullifies the legislatively enumerated purpose behind the creation of the Judicial Performance Commission; namely to inform the public about the qualifications of the judges who are standing for a retention election. The proponents of the Initiative, however, urge us to view the Initiative as one which continues to allow the Commission to review judicial performance, but not mention or publicize the results of said reviews. In addition, the Initiative mandates that voters be informed about judges standing for retention or removal elections by the dissemination of information on caseloads, case resolution time, continuances, hours of daily courthouse attendance, and criminal sentencing records, as well as all discipline commission complaints and appellate opinions.

As discussed earlier, it is not this court's function to address the merits of a proposed initiative, interpret its language, or predict its application. *See In re Petition on Campaign & Political Fin.*, 877 P.2d 311, 313 (Colo.1994); *In re Proposed Initiative on Fair Treatment of Injured Workers*, 873 P.2d 718, 719–20 (Colo.1994); *In re Proposed Election Reform Amend.*, 852 P.2d at 28. Rather, this court's review must be limited to a determination of whether the contested language within the Initiative creates a distinct and separate subject which is not connected to or dependent upon the remaining aspects of the Initiative. Here, the language of the Initiative has as its subject the qualifications, appointment, and retention of judges. The dissemination of information about judges standing for removal or retention elections is connected with this subject.

Accordingly, the contested language does not violate the constitutional prohibition against second subjects.

### 5. Recall Petitions

Petitioner next asserts that the language of the Initiative creates a separate and unrelated subject by establishing a recall procedure for judges at variance with other constitutional recall procedures for non-judges. We disagree. As we have emphasized, this court's review of the single-subject requirement is limited to whether the proposal has "at least two distinct and separate purposes which are not dependent upon or connected with each other." *In re "Public Rights in Waters II.*", 898 P.2d at 1078–79. Here, the purpose of the Initiative is to alter the manner is which judges are qualified, appointed and retained. As such, provisions within the Initiative dealing with the recall of judges are necessarily connected with the purpose of altering how judges are retained.

### 6. Probate and Juvenile Court

Finally, Petitioner alleges that the proposal creates a second subject because it eliminates the probate and juvenile courts of the City and County of Denver. Because this Initiative does not seek to abolish the probate or juvenile courts of the City and County of Denver, we do not address this last allegation.

### B. CLEAR TITLES REQUIREMENT

Petitioner additionally claims that, even if a single subject is presented within the proposed Initiative, the titles and summary as set by the Title Board fail to conform to the legal requirements of accuracy and fairness. Petitioner argues that the titles are unclear in the following ways: (1) the definition of judicial personnel; (2) the procedure for removal elections; (3) the procedure for providing voter information about judges; and (4) the explanation of term limits.

### 1. Definition of Judicial Personnel

Petitioner first alleges that the titles and summary are unclear as to which judicial

personnel are affected by the Initiative. We agree.

First, due to a contradiction between the titles and the text of the Initiative, a voter would not be able to determine whether water judges are included within the Initiative. For example, the text of the Initiative provides that its provisions apply to "*all* active county, district, court of appeals, and supreme court judges." (Emphasis added.) The title, however, expressly *exempts* water judges from its terms. The summary, on the other hand, provides that "[t]his measure ... would affect *all* county, district, and *water court judges* and magistrates." (Emphasis added.)

Second, a voter would not be able to determine whether probate and juvenile judges are included within the Initiative. Again, the language of the Initiative itself provides that "*all* active county, district, court of appeals, and supreme court judges" are affected. (Emphasis added.) The title, however, specifically *exempts* probate and juvenile judges. The summary, on the other hand, provides that the Initiative will affect "*all* county, district, ... [and] the probate and juvenile court judges and magistrates in the City and County of Denver." (Emphasis added.)

### 2. Procedure for Removal Election

■ Petitioner next alleges that the titles and summary are unclear with respect to the procedure used to remove a judge. We agree.

The language of the Initiative states that a judge may be removed after a petition to remove a judge is signed by "registered electors in that court district *not to exceed 5%* of the general election votes last cast in that district for all secretary of state candidates." (Emphasis added.) This aspect of the Initiative is not discussed in the title or submission clause, but is repeated verbatim in the summary section.

The plain language of this section suggests that one or more voters (any amount less than 5%) may sign the removal petition and thus put the removal petition on the ballot. However, if more than 5% of the voters sign

a removal petition, the petition would not be placed on the ballot.

The "not to exceed" language is unclear when compared to the language used in other Colorado recall or removal statutes. Sections 1–12–101 to –123, 1 C.R.S. (1999), provide for the recall from office of various selected officers. Each of these statutes clearly states the number of signatures that are necessary before a petition may be placed on the ballot. For example, section 1–12–104, which governs the recall of state and county officers, provides that the petition "shall be signed by eligible electors *equal in number* to twenty-five percent of the entire vote cast at the last preceding general election." (Emphasis added.) Petitions to recall school district officers, on the other hand, are governed by section 1–12–105, which states that the petition shall be "signed by eligible electors of the school district *equal in number to* at least forty percent of those electors who voted in such district." (Emphasis added.) Finally, in order to recall nonpartisan officers, a petition "shall be signed by *three hundred* eligible electors of the political subdivision." (Emphasis added.) In each of these statutes, a set percentage or number of signatures is required, with no "upper limit" set for the collection of signatures.

As noted above, the Title Board repeated the language "not to exceed 5%" in its summary, without further explaining that the Initiative sets an upper limit on the number of signatures which need to be collected, but no lower limit. The summary does not explain that the result of this Initiative would be to allow a recall petition to be put on the ballot if only one voter signs the petition.

■ We have previously held that the mere repetition of language from the initiative to the titles and summary does not necessarily ensure that the voters will be apprised of the true intent and purpose of the initiative.

> While it is true that the title and submission clause read, virtually word for word, the same as the Initiative, this fact does not establish that the title and submission clause fairly and accurately set forth the major tenets of the Initiative. The pertinent question is whether the general un-

derstanding of the effect of a 'yes' or 'no' vote will be unclear from reading the title. There may be situations, therefore, where the title and submission clause likely would create public confusion or ambiguity about the effect of an Initiative even though they merely repeat the language contained in the Initiative itself.

*In re Proposed Initiative on "Obscenity,"* 877 P.2d 848, 850 (Colo. 1994) (citations omitted) In the instant case, the "not to exceed" language of the Initiative, which was repeated without explanation or analysis in the summary, creates confusion and ambiguity.

### 3. Voter Information

■ Petitioner next contends that the titles and summary are misleading with respect to the procedure used to provide the public with information about a judge standing for a retention or removal election. We disagree. The summary fully sets forth the information that will be provided to the public about a judge and discloses that no Judicial Performance Commission reviews will be published. Similarly, the titles state that the Initiative proposes to publicize reports about judges. Accordingly, a voter would not be confused about the nature of the Initiative or its provisions regarding election information.

### 4. Term Limits

■ Petitioner finally argues that the titles fail to disclose that the term-limit provisions of the Initiative provide only one future term for any judge having eight or more years of service. We disagree. The summary prepared by the Board specifically states that if a judge has served eight years or more at a judicial level, that judge is eligible to serve only one additional term at that level. In addition, the titles set forth that the measure limits future terms of office. As such, a voter would not be confused about the nature of the Initiative regarding term limits.

### IV. CONCLUSION

We hold that the Initiative not only fails to comply with the requirement that the titles clearly state the purpose of the Initiative but also encompasses multiple subjects in violation of Section 1(5.5) of Article V of the Colorado Constitution. Therefore, we conclude that the Title Board erred in fixing the titles and summary for Initiative # 104. Accordingly, we reverse the action of the Title Board and return this matter to the Board with directions to strike the title, ballot title and submission clause, and summary and return the Initiative to the proponents.

### APPENDIX

#### Proposed Initiative on "1999–2000—# 104"[9]

The title as designated and fixed by the Board is as follows:

AN AMENDMENT TO THE COLORADO CONSTITUTION CONCERNING JUDICIAL PERSONNEL, AND, IN CONNECTION THEREWITH, LIMITING FUTURE TERMS OF OFFICE FOR STATE COURT JUSTICES, JUDGES, AND MAGISTRATES, EXCEPT PROBATE, JUVENILE, AND WATER JUDGES, BEGINNING WITH THE NOVEMBER 2000 ELECTION; DEFINING "JUDGES" TO INCLUDE JUSTICES AND MAGISTRATES; PROVIDING THAT THE GOVERNOR APPOINT ALL STATE COURT JUDGES SUBJECT TO SENATE AND VOTER APPROVAL; ESTABLISHING A PROCEDURE FOR REMOVAL ELECTIONS; REQUIRING ANY JUDGE TO STAND FOR ELECTION IF CONVICTED OF CERTAIN CRIMES, RECEIVING A NEGATIVE DISCIPLINARY FINDING, OR THE SUBJECT OF A REMOVAL PETITION; RETAINING ONLY THROUGH THE NEXT YEARLY ELECTION ANY JUDGE RECEIVING A MAJORITY VOTE LESS THAN 60%; PUBLICIZING REPORTS ON EACH JUDGE; PROVIDING SPECIFIC VOTER INFORMATION; PROHIBITING CERTAIN PERSONS FROM SERVING AS ACTIVE OR SENIOR JUDGES; PROVIDING ENFORCEMENT PROCEDURES; AND REPEALING CERTAIN CONSTITUTIONAL

9. State Judicial Personnel – Selection, Retention, and Removal.

PROVISIONS TO CONFORM WITH THIS AMENDMENT.

The ballot title and submission clause as designated and fixed by the Board is as follows:

SHALL THERE BE AN AMENDMENT TO THE COLORADO CONSTITUTION CONCERNING JUDICIAL PERSONNEL, AND, IN CONNECTION THEREWITH, LIMITING FUTURE TERMS OF OFFICE FOR STATE COURT JUSTICES, JUDGES, AND MAGISTRATES, EXCEPT PROBATE, JUVENILE, AND WATER JUDGES, BEGINNING WITH THE NOVEMBER 2000 ELECTION; DEFINING "JUDGES" TO INCLUDE JUSTICES AND MAGISTRATES; PROVIDING THAT THE GOVERNOR APPOINT ALL STATE COURT JUDGES SUBJECT TO SENATE AND VOTER APPROVAL; ESTABLISHING A PROCEDURE FOR REMOVAL ELECTIONS; REQUIRING ANY JUDGE TO STAND FOR ELECTION IF CONVICTED OF CERTAIN CRIMES, RECEIVING A NEGATIVE DISCIPLINARY FINDING, OR THE SUBJECT OF A REMOVAL PETITION; RETAINING ONLY THROUGH THE NEXT YEARLY ELECTION ANY JUDGE RECEIVING A MAJORITY VOTE LESS THAN 60%; PUBLICIZING REPORTS ON EACH JUDGE; PROVIDING SPECIFIC VOTER INFORMATION; PROHIBITING CERTAIN PERSONS FROM SERVING AS ACTIVE OR SENIOR JUDGES; PROVIDING ENFORCEMENT PROCEDURES; AND REPEALING CERTAIN CONSTITUTIONAL PROVISIONS TO CONFORM WITH THIS AMENDMENT?

The summary prepared by the Board is as follows:

This measure amends the Colorado constitution and would affect all county, district, and water court judges and magistrates, the probate and juvenile court judges and magistrates in the City and County of Denver, judges of the court of appeals, and justices of the supreme court. It would limit future terms of county, district, and court of appeals judges and magistrates and supreme court justices to four years and prohibit such jus-

tices, judges, and magistrates from serving more than three future terms at each court level. The measure states that it would be effective after November 6, 2000, and would therefore apply beginning with the November 2000 election.

The measure defines "judge" to include a justice and a magistrate. The measure provides for fixed terms ending on November 15 of an even-numbered year and for a shorter first term, and that any future partial term constitutes a full term. It also provides that any such judge who has served eight years or more at a judicial level is eligible to serve only one additional term at that level. The measure prohibits mandatorily retired, removed from office, or defeated judges from serving as active or senior judges. The measure requires the written consent of all parties for a senior judge to serve, but a term-limited judge cannot serve as a senior judge.

The measure changes the manner in which all state court judges are selected by allowing the governor to appoint any qualified elector who resides in the court district even if the person were not recommended by a judicial nominating commission. The measure would prohibit any state court judge from taking office until approved by the senate following a public hearing held after at least ten days' [sic] notice. It requires all state court judges to face a retention election in the first annual state election at least 90 days following approval by the senate. The measure would suspend without pay any judge convicted of a felony or misdemeanor or subject to any negative finding by the commission on judicial discipline and require the judge to face a retention election in the next November election at least ninety days following the conviction or finding.

The measure would require a removal election if signatures, not to exceed 5% of the total votes cast in the court district for the office of secretary of state, are collected within 12 months on petitions requesting the removal of any active or senior judge. The measure provides procedures for the approval of petition entries including a presumption of validity of specified entries, prohibiting the use of random sampling, and allowing only petitioners to appeal. It also provides that

more than one member of the same court may be listed on a single petition and prohibits the listing of reasons for or against retention or removal on the petition or the ballot.

If a judge is retained or not removed by a majority vote less than 60%, the measure provides that the judge is retained or not removed only until the November 15 after the next annual election.

The measure would establish that all future appellate opinions and all future complaints, papers, hearings, and findings of the commission on judicial discipline are public and must be made computer accessible within 10 days. It would require that calendar year information concerning the caseload, case resolution time, continuances, hours of attendance, and criminal sentencing information for each judge be made public and computer accessible by the following March 1.

For each judge facing a retention or removal election, the measure would require that ballot information booklets and mailed election notices contain only information concerning any misdemeanor or felony conviction, any negative finding by the commission on judicial discipline, a true summary of the prior year's record, and a statement in favor of the incumbent and a summary of comments against retention or for removal mailed or filed by any person or group. It would prohibit mentioning or publishing any judicial performance commission review.

The measure states that it shall be strictly construed and shall supersede any conflicting law. It provides that any Colorado resident or group has standing to enforce its provisions, that the Colorado supreme court has original jurisdiction to hear, and decide within 60 days, any case concerning its enforcement, and that legal fees and costs shall always be paid only to successful plaintiffs who seek to enforce this measure.

The measure would repeal, effective November 7, 2000, conflicting provisions of the Colorado constitution including:

- The terms of office and qualifications for judges and justices;

- The appointments of judges and justices from a list of nominees submitted by a judicial nominating commission;

- The confidentiality of papers and proceedings before the commission on judicial discipline;

- The requirements that judges and justices above the county court level be licensed to practice law for at least 5 years.

The Department of Local Affairs believes that counties may have to pay some of the expenses incurred in making information concerning judges computer accessible. The Department cannot determine the amount of this fiscal impact.

The Office of State Planning and Budgeting believes that the measure has a fiscal impact on the general fund of the state that cannot be fully quantified at this time. The requirement that judicial records be made computer accessible would cost approximately $120,000. The bulk of the fiscal impact would be caused by increased judicial vacancies and staff turnover. Additional need for staff research would come from the governor's role in appointing judges and the need for public hearings and senate confirmation of judicial appointments.

No title set due to a tie vote regarding the single subject requirement from the board

Hearing adjourned at 3:25 p.m. April 9, 1999

Rehearing Granted Title Set May 5, 1999

Rehearing adjourned at 5:17 p.m.

May 19, 1999 Rehearing

- Mr. Bennett S. Aisenberg Motion for Rehearing denied by a tie vote by the board

- Mr. Douglas Campbell Motion for Rehearing granted in part, denied in part

Rehearing adjourned at 4:26 p.m.

The text of the Initiative is as follows:

Section 1. Article VI of the state constitution is amended to add:

**Section 6.** *State judicial personnel – selection, retention, and removal.* After November 6, 2000:

(1) *Term limits.* Future terms of office for all active county, district, court of ap-

peals, and supreme court judges shall be four years, except for a shorter first term for each office, and shall end on November 15 of an even-numbered year. At each level, no one shall serve more than three future terms of office. Any future partial term, including completing a term of another judge, shall also be a term of office. Anyone who has served eight years or more at one level shall be eligible for only one future term at that level.

(2) *Selection.* The governor shall appoint all future active county, district, probate, juvenile, water, court of appeals, and supreme court judges; and senior judges for service up to 60 court days in any 12 months. No one shall take office without senate approval following a hearing with public testimony, held ten days or more after public notice. Judges need not be chosen from a nominating commission list, but shall be qualified electors residing in their court district while in office. If senate-approved, active judges shall face an election on the next yearly state election date at least 90 days later.

(3) *Retention and removal.* (a) Despite any appeal, sentence delay, or other excuse, any negative discipline commission finding or any misdemeanor or felony conviction shall suspend active and senior judges without pay, and compel a retention vote on the next yearly state election date at least 90 days later. Active and senior judges shall also be subject to removal on the next yearly state election date at least 90 days after petition forms circulated by any adult state residents are filed with required entries, collected within 12 months, of registered electors in that court district not to exceed 5% of the general election votes last cast in that district for all secretary of state candidates. Completed entries with an attached circulator oath are deemed valid unless incumbents, within 14 days after entry filing, prove enough entries invalid. Random sampling is prohibited. Absent systematic fraud, if a petition with sufficient entries be invalidated, petitioners shall then have 14 days to file more entries made at any time. Third filings are barred. Only petitioners may appeal, and shall prevail unless the supreme court

rules otherwise on the merits, giving no weight to appealed findings, within 14 days of the appeal filing. One or more members of the same court may be named in the same petition without increasing required entries, but ballot questions and other procedures shall be separate. Delivery of a master petition form, conclusively valid, shall begin the collection period. No petition or ballot shall list reasons for or against retention or removal.

(b) To inform potential voters at any retention or removal election: all future appellate opinions and discipline commission complaints, papers, hearings, and findings shall be public, and shall be computer accessible within five days; complete calendar year records on caseload, case resolution time, continuances, hours of courthouse attendance daily, and criminal sentencing by each judge shall be public and computer accessible by the next March 1; and, in 12–point or larger type, ballot information booklets and mailed election notices shall include only a finding or conviction defined in (a), a true summary of the latest yearly record, and up to 500 words each for the incumbent and for a summary by the election official of all comments against retention or for removal, which may be filed or mailed by any person or group. No judicial performance commission review shall be mentioned or published. A majority under 60% shall retain that incumbent, or delay removal, only until the next November 15 after the next yearly state election date.

(4) *Enforcement.* "Judge" also means "justice" and "magistrate." Section 6 shall be strictly construed; good faith and substantial compliance are insufficient. Its provisions are severable and self-executing, and shall not be balanced or harmonized with, but shall supersede, conflicting laws. Any person or group shall have standing to enforce section 6. Suits shall be filed and orally argued in the supreme court and, except (3)(a) appeals, decided within 60 days of filing. Attorney fees and costs shall always be paid only to successful plaintiffs seeking to enforce section 6. No one shall ever serve as an active or senior judge after mandatory retirement, removal by discipline or election, resignation with a retention or removal election pending,

or defeat for retention. No one shall ever serve as a senior judge without the written consent of all parties to a case or after being term-limited.

Section 2. Article VI, sections 7, 8, 11, 14, 15, 20(1), 20(3), 23(3)(g), and the second sentence of 10(2) of the state constitution are repealed November 7, 2000.